STATE of Tennessee, Plaintiff–Appellee,

v.

Jimmy DEUTER, Defendant–Appellant.

Supreme Court of Tennessee,
at Jackson.

Sept. 14, 1992.

Mark W. Fowler, Union City, for defendant-appellant.

Charles W. Burson, Atty. Gen. and Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, for plaintiff-appellee.

## OPINION

REID, Chief Justice.

This case presents an appeal by the defendant from the judgment of the Court of Criminal Appeals affirming five convictions of aggravated sexual battery. The record does not support the convictions.

The trial court admitted as evidence videotaped statements of the alleged child victims taken by police officers during their investigation of charges of sexual battery.

The record does not show when, in relation to the time of the acts charged, the statements were taken. There is no showing that the witnesses were under oath. The only persons present were the witnesses and the police officers. The State presented no evidence justifying the use of the statements, but relied upon T.C.A. § 24–7–116(c)(1)(I)(ii) (since repealed). The Court of Criminal Appeals found that although the admission into evidence-in-chief of the *ex parte*, unsworn video testimony of the alleged victims violated the defendant's federal and state constitutional rights to confront the witnesses against him, the error was harmless beyond a reasonable doubt.

The State originally conceded that the admission of the video testimony was error under this Court's holding in *State v. Pilkey*, 776 S.W.2d 943 (Tenn.1989), *cert. denied*, 494 U.S. 1032, 1046, 110 S.Ct. 1483, 1510, 108 L.Ed.2d 619 (1990) in which the Court, relying upon *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), found that the admission of the statements into evidence deprived the defendant of his federal constitutional right of confrontation. However, in a supplemental brief, the State contends that the procedure followed in the case before the Court meets the requirements of the rule announced in *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), and does not offend the confrontation clause of the federal constitution or of the state constitution.

### Sixth Amendment

■ *Pilkey* held, in reliance upon *Coy*, that to "permit a videotape procured outside the defendant's presence to be used as evidence in chief by the prosecution, in our opinion impermissibly infringes upon the confrontation rights of the accused." 776 S.W.2d at 951. The taped statements used in *Pilkey* were taken, as were the statements in this case, prior to trial with only the investigators and the child present. The Court compared the facts in *Pilkey* with the facts in *Coy*, as follows:

The *Coy* case involved child sexual abuse. In that case the child testified at trial but under a lighting arrangement which permitted the accused to see and hear the witness but prevented the witness from actually seeing the accused. Six members of the United States Supreme Court held that the federal confrontation clause guaranteed the accused the right to a literal face-to-face confrontation with the witness who testified against him at trial at least in the absence of a specific showing of need to dispense with that aspect of confrontation or in the absence of an established exception to the hearsay rule. *See* 487 U.S. at [1020–21], 108 S.Ct. at 2803, 101 L.Ed.2d at 868 (O'Connor, J., concurring).

In cases of real necessity, the guarantee of the right of confrontation can be required to yield, as in *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Further the *Coy* decision seems to have left open the question of whether a "necessity" exception exists to the accused's right to confront the alleged child victim. In the present case, however, there has been no judicial determination whatever that the child witness would be in any way traumatized or stressed by appearing in court, nor has any other particularized need been suggested for use by the State of the prior *ex parte* statement of the witness.

*Id.* at 949 (footnote omitted). The Court concluded, "[i]n summary, therefore, we hold that the attempt to use the videotape in the manner shown in this case violates the confrontation rights of the accused, and insofar as the statute purports to authorize such use, it is unconstitutional." *Id.* at 951.

The State contends that the federal constitutional right of confrontation was relaxed in *Maryland v. Craig, supra.* In that case, the United States Supreme Court held that the Confrontation Clause does not guarantee a criminal defendant an absolute right to physical confrontation with witnesses against him and upheld a Maryland statute that allowed the claimed victim to testify at trial by one-way television. The Court in *Maryland v. Craig* first explained

the limitations of its holding in *Coy* as follows:

> We observed in *Coy v. Iowa* that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." 487 U.S., at 1016, 108 S.Ct., at 2800 (citations omitted).....
>
> We have never held, however, that the Confrontation Clause guarantees criminal defendants the *absolute* right to a face-to-face meeting with witnesses against them at trial. Indeed, in *Coy v. Iowa,* we expressly "le[ft] for another day ... the question whether any exceptions exist" to the "irreducible literal meaning of the Clause: 'a right to *meet face to face* all those who appear and give evidence *at trial.'*" 487 U.S., at 1021, 108 S.Ct., at 2802–2803 (quoting [*California v. Green,* 399 U.S. 149, 175, 90 S.Ct. 1930, 1943, 26 L.Ed.2d 489 (1970)] (Harlan, J., concurring)). The procedure challenged in *Coy* involved the placement of a screen that prevented two child witnesses in a child abuse case from seeing the defendant as they testified against him at trial. See 487 U.S., at 1014–1015, 108 S.Ct., at 2799–2800. In holding that the use of this procedure violated the defendant's right to confront witnesses against him, we suggested that any exception to the right "would surely be allowed only when necessary to further an important public policy"—*i.e.,* only upon a showing of something more than the generalized, "legislatively imposed presumption of trauma" underlying the statute at issue in that case. *Id.,* at 1021, 108 S.Ct., at 2802–2803; see also *id.,* at 1025, 108 S.Ct., at 2804 (concurring opinion). We concluded that "[s]ince there ha[d] been no individualized findings that these particular witnesses needed special protection, the judgment [in the case before us] could not be sustained by any conceivable exception." *Id.,* at 1021, 108 S.Ct., at 2802–2803. Because the trial court in this case made individualized findings that each of the child witnesses needed special protection, this case requires us to decide the question reserved in *Coy.*

110 S.Ct. at 3162–63 (emphasis in original). In deciding the question reserved in *Coy,* the Court stated:

> In sum, our precedents establish that "the Confrontation Clause reflects a *preference* for face-to-face confrontation at trial," [*Ohio v. Roberts,* 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980)] (emphasis added; footnote omitted), a preference that "must occasionally give way to considerations of public policy and the necessities of the case," [*Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895)].

*Id.* at 3165. The Court in *Craig* adopted an interest balancing analysis and found that in some cases the right to physical confrontation may be denied if necessary to further an important public policy and reliability of the testimony is otherwise assured. *Id.* at 3166. The Court held that even in cases when face-to-face confrontation is not an absolute constitutional requirement, it may be abridged only where the procedure followed "adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony," *id.* at 3166, and where there is a " 'case-specific finding of necessity.' " *Id.* at 3170. After discussing the arrangement under which the witness in *Craig* testified, the Court concluded:

> Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consonant with the Confrontation Clause.

*Id.* at 3170.

The case was remanded for a determination of whether the trial court had made the requisite finding of necessity. The "necessity" finding required under *Craig* is "a specific finding that testimony by the child in the courtroom *in the presence of the defendant* would result in the

child suffering serious emotional distress such that the child could not reasonably communicate." *Id.* at 3170 (emphasis in original). It should be noted that the interest to be protected is the child-witness's *ability to testify* and that to satisfy this interest, the trial court must determine that the trauma to the child would be such that the child's ability to communicate would be impaired by the presence of the defendant rather than the courtroom and the proceedings generally.

The procedure under scrutiny in *Craig* required that the child-witness, prosecutor, and defense counsel withdraw from the courtroom to another room where the child was examined and cross-examined. The proceedings in the separate room were transmitted to the courtroom, where the defendant, judge, and jury remained, by one-way, closed-circuit television. The defendant could talk with his counsel by telephone, and the judge conducted the proceedings in the same manner as if the examination were being held in the courtroom.

The procedure followed in *Craig* was totally different from that followed in the case before the Court, in which the questioning occurred several months before the trial, and only each child and investigators were present. In addition to the *ex parte* video testimonies of the victims, the inculpatory evidence consisted of the victims' in-court testimony and the defendant's confession. The parties stipulated that there was no medical evidence of abuse. The alleged victims were three brothers who were ages 14, 11, and 8 when the case was tried in November 1988, and the incidents on which the charges were based were alleged to have occurred approximately one year earlier.

Following the showing at trial of each child's video testimony, the child was called to the stand for cross-examination by defense counsel and redirect examination by the prosecuting attorney. The testimony of each child at trial was reluctant, uncertain, and vague. A few statements of fact were extracted but only by the persistent effort of the prosecuting attorney with the assistance of the trial judge. Their testimonies included no information as to when, where, or under what circumstances the acts occurred; what their relationship with the defendant and co-defendant Edwards was (whether relatives, friends, or other); how long, where, or with whom they lived; or how the acts were discovered. The unreliability of the victims' in-court testimony is indicated by the 11 year old's inability to state the name of the town where he lived when the acts were committed, the town where he lived at the time he testified, or even the name of his schoolteacher. There is no indication in the record, nor does the State even claim, that the children's implausible testimony at trial was caused by the defendant's presence.

The videotaped pre-trial testimony, elicited by leading questions, was more definite and included acts more numerous and more serious than those mentioned in the witnesses' in-court testimony. For instance, in his video testimony, the eight-year-old brother testified to acts of fellatio and anal penetration. In court, his testimony was that the defendant did "nasty things." In their video testimonies, the witnesses also made references to incestuous acts involving other family members, acts which are not relevant to this case.

The record shows conclusively that the procedure followed did not meet the requirements set forth in *Craig*. The conclusion is that the defendant was denied the right to confrontation guaranteed by the Sixth Amendment to the United States Constitution.

### Article I, § 9

■ The State also contends that the unsworn, *ex parte* videotaped statements taken several months prior to the trial satisfy the requirements of Article I, § 9 of the Tennessee Constitution, which provides that "in all criminal prosecutions, the accused hath the right ... to meet the witnesses face-to-face."

Justice Scalia's dissent in *Craig* puts the issue in a starker and perhaps more realistic perspective than does the majority's balancing test. The dissent suggests that an

explicit constitutional safeguard is being denied to facilitate the conviction of those charged with sexual offenses against children. The dissent asserts that the constitutional right of confrontation is more than a "preference." It begins:

> Seldom has [a court] failed so conspicuously to sustain a categorical guarantee of the Constitution against the tide of prevailing current opinion.

110 S.Ct. at 3171 (Scalia, J., dissenting). Justice Scalia then set forth why, in his opinion, any procedure involving less than personal confrontation fails to accomplish the purpose of the constitutional provisions:

> Because of this subordination of explicit constitutional text to currently favored public policy, the following scene can be played out in an American courtroom for the first time in two centuries: A father whose young daughter has been given over to the exclusive custody of his estranged wife, or a mother whose young son has been taken into custody by the State's child welfare department, is sentenced to prison for sexual abuse on the basis of testimony by a child the parent has not seen or spoken to for many months; and the guilty verdict is rendered without giving the parent so much as the opportunity to sit in the presence of the child, and to ask, personally or through counsel, "it is really not true, is it, that I—your father (or mother) whom you see before you—did these terrible things?" Perhaps that is a procedure today's society desires; perhaps (though I doubt it) it is even a fair procedure; but it is assuredly not a procedure permitted by the Constitution.

*Id.* at 3172 (Scalia, J., dissenting).

A critical analysis of the essential premise of the *Craig* decision, that the presence of the defendant may undermine the truth-finding function of the trial, is found in Vol. VIII, *Thomas M. Cooley Law Review:*

> If the need for confrontation is to protect the defendant from the child who is lying, the fact-finding process will be better served by the traditional confrontation afforded when the child takes the stand in front of the defendant in the courtroom. The jury's opportunity to observe the witness testifying in front of the defendant has value that should not easily be dismissed. From the legal perspective of our traditional criminal jurisprudence, we do not know whether the child is telling the truth until the trial is over and the verdict rendered. "[F]ace-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult." Unlike the co-conspirator's statement in *Inadi* [*United States v. Inadi,* 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) ], a child's televised testimony is only more reliable if the child has been abused by the defendant. Without establishing that fact, there is no inherent reliability in or special circumstances surrounding the out of court testimony to enhance the value of the evidence.

Note, *Something More Than a Generalized Finding: The State's Interest in Protecting Child Sexual Abuse Victims in Maryland v. Craig Outmuscles the Confrontation Clause,* 8 Thomas M. Cooley L.Rev. 389, 406 (1991) (footnotes omitted).

The "face-to-face" language found in the Tennessee Constitution has been held to impose a higher right than that found in the federal constitution. In an opinion decided since *Craig,* the Supreme Court of Pennsylvania, construing language of that state's constitution identical to the confrontation provision in the Tennessee Constitution, first addressed the practical significance of personal confrontation:

> In *Commonwealth v. Russo,* 388 Pa. 462, 470–471, 131 A.2d 83, 88 (1957) we addressed the "face to face" requirement of Article I, § 9 of our Constitution, stating:
>
> > Many people possess the trait of being loose tongued or willing to say something behind a person's back that they dare not or cannot truthfully say to his face or under oath in a courtroom. It was probably for this reason, as well as to give the accused the right to cross-examine his accusers and thereby

enable the jury to better determine the credibility of the Commonwealth's witnesses and the strength and truth of its case, that this important added protection was given to every person accused of crime. We have no right to disregard or (unintentionally) erode or distort any provision of the constitution, especially where, as here, its plain and simple language make its meaning unmistakably clear; indeed, because of the times in which we live we have a higher duty than ever before to zealously protect and safeguard the constitution.

*Commonwealth v. Ludwig*, 527 Pa. 472, 594 A.2d 281, 284 (1991). In refusing to follow the balancing of interests test announced in *Craig*, the Pennsylvania court stated:

> When a Constitutional guarantee is clear and explicit, as in this instance, an interest balancing analysis is the wrong approach. The confrontation clause does not guarantee reliable evidence but rather it guarantees specific trial procedures that were thought to assure reliable evidence.

*Id.* 594 A.2d at 283. The Pennsylvania court stated, however, that even under the explicit "face-to-face" language of the Pennsylvania Constitution "no right is absolute." The court found that the Pennsylvania Constitution allows exceptions to the right of confrontation "only in those instances in which the accused has already had the opportunity to confront the witnesses against him face to face." *Id.* at 284. *See also Brady v. Indiana*, 575 N.E.2d 981 (Ind.1991), in which the Indiana Supreme Court also recently found that that state's face-to-face provision was violated by admitting into evidence a previously recorded videotaped statement during which the defendant could view by one-way television the witness while testifying and could communicate electronically with his defense counsel during the testimony. However, the court suggested that *two-way* television communication between the defendant and witness could pass constitutional muster. *Id.* at 989.

Even though, as stated above, the face-to-face language found in the Tennessee Constitution has been construed to permit exceptions to the right to confrontation, the procedure followed in the case before the Court falls far short of providing the protection afforded by Article I, Section 9. The statute under which the statements were admitted into evidence was found in *Pilkey* to violate the defendant's constitutional right to confrontation. That statute has since been repealed and no other statute is before the Court for consideration. Consequently, as noted by this Court in *Pilkey*, the extent to which our constitution exceeds the protection provided by the federal constitution need not be decided in this case.

### Harmless Error

■ The State further contends that, as found in *Pilkey*, admission of the tapes was harmless when measured by *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), in which the United States Supreme Court held:

> Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in *Fahy v. State of Connecticut* [375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963),] about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy*, case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

87 S.Ct. at 828 (footnote omitted). The issue, therefore, is whether the State has shown that there is no reasonable possibility that the video testimony might have contributed to the conviction.

The proof in *Pilkey,* 776 S.W.2d at 943, in which the Court found that the use of video testimony was harmless error, was significantly different from the proof in the present case. In *Pilkey,* there was medical evidence of abuse, and the defendant's confession was corroborated by evidence other than the victim's testimony. In this case, the parties stipulated that there was no medical evidence of abuse, and, although the victims' testimony shows abuse, their testimony with regard to specific acts is not consistent with the defendant's confession. The evidence in the present case is much less convincing than that in *Pilkey.*

The prejudicial effect of the video testimony further appears from examination of the co-defendant's case. The victims described in their video testimonies several sexual acts committed upon them by co-defendant Edwards. However, in their in-court testimony, they consistently denied that Edwards molested them in any way. Nevertheless, Edwards was found guilty on four charges of assault with intent to commit sexual battery. The children's in-court testimony with regard to particular acts was not consistent with Edwards's confessions. Without the video testimony, there was no corroboration of Edwards's confession. Prejudice is apparent. The State has failed to show that the constitutional error was harmless beyond a reasonable doubt.

### Conclusion

The judgments of the Court of Criminal Appeals and the trial court are reversed, and the case is remanded for a new trial. Costs will be borne by the appellee.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.