IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Brief January 5, 2010

## STATE OF TENNESSEE v. AREALIE BOYD

**Direct Appeal from the Criminal Court for Shelby County**
**No. W09-00097     James M. Lammey, Jr., Judge**

_____

**No. W2009-00762-CCA-R3-CD  - Filed March 30, 2010**

_____

The defendant, Arealie Boyd, pled guilty to forgery over $1,000, a Class D felony, on March 30, 2009.  After a hearing, the trial court sentenced her to a two-year sentence in the Shelby County Correctional Center, suspended all but thirty days of the sentence, and placed her on probation for six years.  On appeal, the defendant challenges the length and manner of her sentence.  Specifically, she contends that the trial court should have sentenced her as an especially mitigated offender to either full probation or judicial diversion.  Additionally, the defendant contends that the trial court erred in allowing hearsay testimony at the sentencing hearing.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Robert Wilson Jones, District Public Defender; and Phyllis Aluko (on appeal) and J. Mark Alston (at trial), Assistant Public Defenders, for the appellant, Arealie Boyd.

Robert E. Cooper, Jr., Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stacey McEndree, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Background

The defendant pled guilty to a criminal information charging forgery over $1,000 and stipulated to the following facts at her guilty plea hearing.

[The] facts of the case had the matter gone to trial would have shown that on December 16th of 2008, [the defendant] was working at the Mapco on Shelby Drive. She used the computer system to generate twenty separate money orders of $500 each[,] totaling about $10,000. She took nineteen of those. The twentieth one got jammed in the machine, which is the only reason the store knows . . . that there were only nineteen done before the one got jammed.

She also took cash from the business. . . . [T]he money orders were stopped, although, she got the cash in the amount of $2,181.39. Everything was caught on the surveillance tape. She did admit to doing this and this did happen in Shelby County.

In the sentencing portion of the hearing, the defendant testified that she was nineteen years old and had completed high school. She planned to continue her education at Southwest Community College. She was unemployed but had worked steadily since she was sixteen, first at Sonic Drive-In and then at Mapco. She was adopted at thirteen years old. Although she knew her biological family, she did not associate with them. She had her own apartment and did not have any dependents. Her "step-mom" helped her pay her bills, and she thought it was likely that she could move in with her "step-mom" if necessary. She testified that she took the cash and the money orders because she was under pressure and also because she wanted to help her "guy-friend," who was incarcerated. She apologized to Mapco and stated that she should receive judicial diversion because she is a "good citizen." She said she could pay Mapco back.

On cross-examination, the defendant said that she worked at Mapco for six months. The defendant testified that her "step-mom" was Ora Mabry, her "friend-guy's" mother. She said that she had been in a romantic relationship with her "guy-friend"[1] for two years. Her boyfriend was incarcerated on an attempted second-degree murder charge. She denied that she needed $30,000 for his bail. The defendant testified that she did not plan to bond her boyfriend out of jail but instead planned to put money on his books at the jail and start over by leaving Memphis. She agreed that she did not leave Memphis but used the money taken from Mapco to pay her bills and help her biological mother. The defendant said that she could stay with her adopted mother instead of Ms. Mabry. She agreed that she had not made any restitution to Mapco yet.

On re-direct examination, the defendant said that once she got a job, then she could begin paying Mapco. She said that she took $1,860 in cash from Mapco.

---

[1] The defendant referred to her boyfriend as both "friend-guy" and "guy-friend."

The state called Thomas Leroy Murray, who was the district manager for Mapco at the time of the incident. Mr. Murray confirmed that the defendant worked at Mapco for six months and had access to both cash and money orders. He testified that, a week after the incident, other Mapco employees said that the defendant needed $30,000 to get her boyfriend out of jail. He said that $500 was the maximum amount for which a money order could be generated and that $500 was the amount of each money order that the defendant generated. Mr. Murray said that once the printer is jammed, only a manager can access the machine. Once he and the store manager learned of the theft, they called Western Union to put a hold on the money orders. Western Union notified them mid-February that they were able to stop payment on all of the money orders. Mr. Murray could not count the exact amount of cash that the defendant took but instead calculated how much cash should have been in the register drawer by adding together the sales during the defendant's shift.

Mr. Murray testified that Mapco was opposed to judicial diversion for the defendant because, when hiring employees, "[he] would like to know that ahead of time if [he is] hiring an employee of this nature again . . . ." He further stated that he was against the court suspending the defendant's sentence because he would "like people to know that there is a consequence for their actions and . . . having it out there that other employers can know about it, may prevent this from happening again for half a dozen people or more over time who work for us now." Mr. Murray said that ninety-one people work in twelve Mapco stores in his district and that the theft was a "hot topic" amongst the employees because of the large amount of money taken.

In discussing the defendant's sentence, the trial court stated that the defendant stole the money to post bond for her boyfriend, which reflected negatively on her social history. The court further stated that Mr. Murray testified as to the deterrent value of the defendant's sentence, specifically that Mapco employees were "all waiting to find out what happens to [the defendant]." The court determined that judicial diversion would not be in the best interest of the public. The court stated that the defendant's mental and physical health were not questionable, and she has no criminal record, which is the only fact that points to her amenability to correction. The court ruled that under the circumstances, the defendant was not a good candidate for judicial diversion and found that no enhancement factors applied. The court sentenced the defendant to two years, the minimum for a Class D felony, in the Shelby County Correctional Center and placed her on six years of probation to begin after thirty days of incarceration.

**Analysis**

On appeal, the defendant challenges both the length and manner of her sentence and contends that the trial court improperly considered hearsay testimony during the sentencing hearing. Specifically, the defendant contends that the trial court should have sentenced her

as an especially mitigated offender to either judicial diversion or full probation. The defendant also argues that Mr. Murray's statements regarding the conversations among Mapco employees were inadmissible hearsay, and the trial court's allowance of the testimony violated the defendant's right to confrontation. The state responds that the trial court was within its discretion in sentencing the defendant as a standard offender and in denying judicial diversion and full probation. The state further responds that Mr. Murray's testimony was not hearsay.

## I. Sentencing

### A. *Standard of Review*

A defendant's sentence is reviewed by the appellate courts *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). For this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). While determining or reviewing a sentence, the courts must consider: (1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *State v. Ashby*, 823 S.W.2d 166, 168; *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

If the trial court has imposed a lawful sentence by following the statutory sentencing procedure, has given due consideration and proper weight to the factors and sentencing principles, and has made findings of fact adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). However, if the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations were correct. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

### B. *Length of Sentence*

The defendant contends that the trial court erred by sentencing her as a Range I standard offender rather than as an especially mitigated offender. The defendant further argues that the trial court should have considered whether the defendant was an especially mitigated offender because the defendant waived indictment in return for a negotiated sentence of 1.8 years.

Tennessee Code Annotated section 40-35-109(a) states that "[t]he court may find the defendant is an especially mitigated offender, if: (1) the defendant has no prior felony convictions; and (3) the court finds mitigating, but no enhancement factors." The Sentencing Commission comments to this section state that "a finding of an especially mitigated offender is discretionary with the trial court." Tenn. Code Ann. § 40-35-109, Sentencing Comm'n Comments.

As an initial matter, the record reflects that the defendant entered a plea open to the court; therefore, the defendant's contention that the trial court should have considered the negotiated sentence of 1.8 years is without merit. In sentencing the defendant, the trial court did not explicitly find that no mitigating factors applied, but the court did consider the defendant's age and the circumstances surrounding the offense. As for her age, the court said, "She's nineteen. She's an adult. She did this to herself." (II, 42) In discussing the circumstances of the offense, the court mentioned the defendant's desire to help her incarcerated boyfriend and the deterrent value that her punishment would have. We conclude that the trial court implicitly considered mitigating factors and found none. Without applicable mitigating factors, the defendant was not eligible for especially mitigated status; thus, the trial court did not abuse its discretion by sentencing the defendant as a Range I standard offender rather than an especially mitigated offender. Additionally, the court found that no enhancement factors applied to the defendant and sentenced her to two years, the minimum for a Class D felony. The record reflects that the trial court gave due consideration to the sentencing principles and factors; therefore, we must uphold the court's sentence. *Fletcher*, 805 S.W.2d at 789.

### C. Judicial Diversion

The defendant petitioned the trial court for judicial diversion, which the trial court denied. On appeal, the defendant argues that the trial court did not consider all of the factors in favor of granting judicial diversion.

Judicial diversion is a "legislative largess" where a defendant, upon being found guilty or pleading guilty, may complete a diversion program and receive expungement of records and dismissal of the charges. *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999). When a defendant contends that the trial court committed error in refusing to impose a sentence pursuant to Tennessee Code Annotated section 40-35-313, commonly referred to as "judicial diversion," this court must determine whether the trial court abused its discretion in failing to sentence pursuant to the statute. *State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997). Judicial diversion is similar to pretrial diversion; however, judicial diversion follows a determination of guilt, and the decision to grant judicial diversion rests with the trial court, not the prosecutor. *State v. Anderson*, 857 S.W.2d 571, 572 (Tenn. Crim. App. 1992). When a defendant challenges the trial court's denial of judicial diversion, we may not

revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996). As this court said in *Anderson*:

> We conclude that judicial diversion is similar in purpose to pretrial diversion and is to be imposed within the discretion of the trial court subject only to the same constraints applicable to prosecutors in applying pretrial diversion under T.C.A. § 40-15-105. Therefore, upon review, if "any substantial evidence to support the refusal" exists in the record, we will give the trial court the benefit of its discretion. Only an abuse of that discretion will allow us to overturn the trial court.

857 S.W.2d at 572 (citation omitted).

The criteria that must be considered in determining whether an eligible accused should be granted judicial diversion include: (a) the defendant's amenability to correction; (b) the circumstances of the offense; (c) the defendant's criminal record; (d) the defendant's social history; (e) the defendant's physical and mental health; and (f) the deterrence value to the defendant and others. *Cutshaw*, 967 S.W.2d at 343-44; *Parker*, 932 S.W.2d at 958. An additional consideration is whether judicial diversion will serve the ends of justice, i.e., the interests of the public as well as the defendant. *Cutshaw*, 967 S.W.2d at 344; *Parker*, 932 S.W.2d at 958.

In denying judicial diversion, the trial court said that the defendant's lack of criminal record was the only fact in favor of her amenability to correction. The court noted that the defendant's physical and mental health were good, but it determined that her social history, namely being romantically involved with a man incarcerated on a charge of attempted murder, weighed against her. The court further determined that judicial diversion would not serve as a deterrent to other Mapco employees. The court concluded that, all circumstances taken together, the defendant was not a good candidate for judicial diversion. The record supports the court's determination. The defendant admitted to her relationship with her boyfriend, and she intended to use the money taken from Mapco to help him, regardless of whether she intended to post his bond. Mr. Murray testified that Mapco was opposed to judicial diversion for the defendant because the company believed that her punishment would be a deterrent against other employees stealing from the stores. We conclude that substantial evidence exists to support the trial court's decision and uphold the court's denial of judicial diversion. The defendant is without relief on this issue.

*D. Probation*

The defendant contends that the trial court erred by ordering her to serve thirty days incarcerated rather than granting full probation.

A defendant is eligible for probation if the sentence received by the defendant is ten years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of ten years is eligible for probation if the individual sentences imposed for the convictions fall within the probation eligibility requirements. *See State v. Langston*, 708 S.W.2d 830, 832-33 (Tenn. 1986).

An especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to ten years or less and for whom incarceration is not a priority is subject to alternative sentencing. *See State v. Byrd*, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. *Id.* at 380. However, although a defendant may be presumed to be a favorable candidate for alternative sentencing, the defendant has the burden of establishing suitability for total probation. Tenn. Code Ann. § 40-35-303(b); *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Even though probation must be automatically considered, "the defendant is not automatically entitled to probation as a matter of law." Tenn. Code Ann. § 40-35-303(b), Sentencing Comm'n Comments; *State v. Hartley*, 818 S.W.2d 370, 373 (Tenn. Crim. App. 1991). A defendant seeking full probation bears the burden on appeal of showing the sentence imposed is improper, and that full probation will be in the best interest of the defendant and the public. *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

Guidance as to whether the trial court should grant alternative sentencing or incarcerate is found in Tennessee Code Annotated section 40-35-103. Sentences involving confinement should be based upon the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103.

As a standard offender convicted of a Class D felony, the defendant was presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. In this case, the trial court placed great emphasis on providing an effective deterrence, thus supporting the court's imposition of a nominal period of confinement. Because the defendant in this case is seeking full probation, she bears the burden of showing that the sentence imposed was improper. In our view, the defendant has not shown that thirty-days of incarceration was an improper sentence nor has she shown that full probation is in her best interest or the best interest of the public. The trial court determined that split confinement was appropriate, and this court is without reason to disturb that decision.

## II. Hearsay

The defendant argues that the trial court considered improper hearsay testimony when determining her sentence. Specifically, she contends that Mr. Murray's statements regarding what Mapco employees were saying about the theft were unreliable hearsay, were not subject to rebuttal, and were a violation of the defendant's right to confrontation. The state responds that the statements were non-hearsay because they were not offered to prove the truth of the matter asserted.

At the sentencing hearing, the following exchange took place:

STATE: Tell the Court what if anything you had heard or found out from other employees about what was going on at the time she did this?

MR. MURRAY: About one week after the incident I was in the store and a couple of the employees mentioned to me that - -

DEFENSE COUNSEL: I'm going to object, Your Honor, if those other employees aren't here to say this themselves.

THE COURT: Well, obviously, he learned of a theft. I think it's been testified to that there was a theft so I - - go ahead.

MR. MURRAY: That the - - they were saying the reason that she needed the money was that her boyfriend had been put in jail on an attempted murder charge and had a $300,000 . . . bail, and needed $30,000, ten percent, to get him out, and I knew nothing of this . . . outside incident until they mentioned it to me . . . and they already knew how much was taken . . . because it's inside

-8-

the store, and one of them made the comment it's a good thing for Mapco that the machine jammed so that it stopped where it did.

It is well-settled in Tennessee that a trial court has statutory authority to admit trustworthy and probative evidence, including hearsay, for sentencing purposes. *State v. Flynn*, 675 S.W.2d 494, 498 (Tenn. Crim. App.1984); *see also* Tenn. Code Ann. § 40-35-209(b). Reliable hearsay is admissible in a sentencing hearing so long as the opposing party has a fair opportunity to rebut the evidence. *See* Tenn. Code Ann. § 40-35-209(b).

In this matter, we are not persuaded that the employees' statements were unreliable because the defendant previously testified to her boyfriend's incarceration and the amount of his bail. Additionally, the defendant was given an opportunity to rebut the statements both in her own testimony and through the cross-examination of Mr. Murray. The defendant directly rebutted the statements in her testimony by saying that she did not intend to use the money to post her boyfriend's bond, and her counsel did not cross-examine Mr. Murray. We conclude, therefore, that the trial court did not err in allowing reliable hearsay testimony at the sentencing hearing.

Furthermore, the defendant's argument that the admission of the testimony violated her federal and state constitutional right of confrontation fails. Relying on *Crawford v. Washington*, 541 U.S. 46 (2004), the defendant contends that her co-workers' comments were testimonial in nature, and she had the right to cross-examine the witnesses unless they were proven to be unavailable. However, this court has previously held that neither the federal nor state constitutional right of confrontation applies to sentencing hearings:

> The Sixth Amendment to the United States Constitution provides criminal defendants the right to confront adverse witnesses. The admission of testimonial hearsay at trial, without a showing of unavailability and an opportunity to cross-examine, generally violates a defendant's right to confront adverse witnesses. *Crawford v. Washington*, 541 U.S. 36, 50, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). A broad consensus exists that the confrontation clause of the U.S. Constitution does not apply, however, to the evidence adduced during sentencing. *See, e.g., U.S. v. Fields*, 483 F.3d 313, 326 (5th Cir. 2007); *also see State v. Stephenson*, 195 S.W.3d 574, 590 (Tenn. 2006) (citing *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). In fact, the Sixth Circuit Court of Appeals held that Crawford did not alter the previous rule that the confrontation clause does not apply to sentencing. *United States v. Stone*, 432 F.3d 651, 654 (6th Cir. 2005). Thus, the U.S. Constitution is no barrier to the admission of hearsay during the

penalty phase of a state criminal trial. As such, if any protection from hearsay during sentencing exists, it must derive from Tennessee state law.

[T]he Tennessee Constitutional right to confront adverse witnesses is, in some aspects, broader than its federal counterpart. Tenn. Const. art. I, § 9; *See State v. Deuter*, 839 S.W.2d 391, 395 (Tenn. 1992) (holding that the Tennessee Constitution requires actual "face to face" confrontation). Even Tennessee's comparably broad confrontation right, however, does not apply to a sentencing hearing. *Stephenson*, 195 S.W.3d at 590 (citing *State v. Smith*, 857 S.W.2d 1, 23 (Tenn. 1993)). Because the Tennessee Constitutional confrontation right applies only to the guilt phase of a trial, the only protection in Tennessee against the introduction of testimonial hearsay during sentencing derives from the Tennessee Code. *Id.; see State v. Moss*, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999).

*State v. William Edwin Harris*, No. M2008-01685-CCA-R3-CD, 2009 WL 1871919, at *6 (Tenn. Crim. App., at Nashville, June 30, 2009), *perm. app. denied* (Tenn. Nov. 30, 2009). Thus, because the constitutional right of confrontation does not apply in sentencing, the defendant is without relief on this issue.

## Conclusion

Based on the foregoing reasons, we affirm the judgment of the trial court.

_____
J.C. McLIN, JUDGE