# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
February 6, 2014 Session

## STATE OF TENNESSEE v. BARRY D. McCOY

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Montgomery County**
**No. 41001277     John H. Gasaway, III, Judge**

---

**No. M2013-00912-SC-R11-CD - Filed December 1, 2014**

---

The defendant was indicted for seven counts of rape of a child. Prior to trial, the State sought permission to offer as evidence a video-recorded statement made by the child victim to a forensic interviewer. At the conclusion of a pre-trial hearing, the trial court refused to allow the video-recorded statement as proof at trial. We granted the State an interlocutory appeal to determine whether Tennessee Code Annotated section 24-7-123 (Supp. 2014) violates the separation of powers, whether the video-recorded statement qualifies as inadmissible hearsay evidence, and whether the use of the statement at trial would violate the defendant's right to confront witnesses. Because section 24-7-123 does not unconstitutionally infringe upon the powers of the judiciary and is a valid legislative exception to the general rule against the admission of hearsay evidence, the ruling of the trial court is reversed and the cause is remanded for trial. The State will be permitted to offer the video-recorded statement as evidence at trial, provided that the evidence is relevant and otherwise comports with the requirements of section 24-7-123 and the Tennessee Rules of Evidence.

**Tenn. R. App. P. 11 Appeal by Permission from Denial of Rule 9 Application;**
**Judgment of the Trial Court Reversed; Case Remanded to the Trial Court**

GARY R. WADE, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; James E. Gaylord and Michelle L. Consiglio-Young, Assistant Attorneys General; John W. Carney, District Attorney General; and Kimberly Lund, Assistant District Attorney General, for the appellant, State of Tennessee.

Gregory D. Smith (on appeal) and Edward DeWerff (at trial), Clarksville, Tennessee, for the appellee, Barry D. McCoy.

**OPINION**

**I. Facts and Procedural History**

On November 2, 2010, Barry McCoy (the "Defendant") was indicted for seven counts of rape of a child victim (the "Child") in violation of Tennessee Code Annotated section 39-13-522 (2014).[1] Two weeks before the scheduled date of trial, the State provided the Defendant with notice of its intent to offer as evidence a video recording of a statement made by the Child to a forensic interviewer pursuant to Tennessee Code Annotated section 24-7-123 (Supp. 2014), a statute which purports to authorize such a statement to be introduced as evidence at trial, but only when certain requirements are met.

The Defendant objected to the admission of the video recording, and, after consideration, the trial court denied the State permission to introduce the evidence on three grounds: (1) the legislature had "overstepp[ed] its constitutional bounds" because the enactment of Tennessee Code Annotated section 24-7-123 intruded upon the inherent authority of the judiciary to regulate the admissibility of evidence; (2) the content of the video recording qualified as hearsay evidence not otherwise admissible under any of the exceptions set out in the Tennessee Rules of Evidence; and (3) because article 1, section 9 of the Tennessee Constitution provides that "in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face," extending even greater rights than the Confrontation Clause of the United States Constitution, the admission of the video recording would violate the Defendant's right to confront witnesses. In making this ruling, the trial court assumed that the State had complied with each of the conditions set out in section 24-7-123.

After denying admission of the video recording, the trial court granted the State's request for an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. The Court of Criminal Appeals granted the appeal but remanded for further proceedings based upon the following rationale:

> [T]he trial court . . . ruled on the constitutionality of [Tennessee Code Annotated section 24-7-123] without having reviewed the video recording or [having] consider[ed] whether the recording would qualify for admission under the statute. The parties did not stipulate that the video recording satisfied the statutory requirements or that the recording was admissible only via the terms of [the statute]. The [trial] court should not have passed on the

---

[1] Rape of a child, a Class A felony, "is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age." Id. § 39-13-522(a), (b)(1).

statute's constitutionality without having first determined whether [the statute] was . . . applicable to this case. If the video recording does not satisfy the statutory prerequisites embodied in . . . section 24-7-123, then the constitutionality of the provision is moot. Similarly, if the video qualifies for admission into evidence at trial under another evidentiary rule, determining the constitutionality of section 24-7-123 as a vehicle of admission would be unnecessary. Also, if the [trial] court rules that the video recording is nevertheless inadmissible via the discretion afforded . . . by . . . section 24-7-123, the court would not reach the issue of the statute's constitutionality. Each of these scenarios underscores the prematurity of the trial court's ruling in this case.

Because the trial court failed to first determine the statute's applicability in this case, the constitutional challenge is not yet ripe for review.

State v. McCoy, No. M2011-02121-CCA-R9-CD, 2012 WL 1941775, at *4 (Tenn. Crim. App. May 30, 2012) (citation omitted).

On remand, the trial court held a pre-trial evidentiary hearing to address the admissibility of the video recording within the specific requirements of Tennessee Code Annotated section 24-7-123, which provides as follows:

(a) Notwithstanding any provision of this part to the contrary, a video recording of an interview of a child by a forensic interviewer containing a statement made by the child under thirteen (13) years of age describing any act of sexual contact performed with or on the child by another is admissible and may be considered for its bearing on any matter to which it is relevant in evidence at the trial of the person for any offense arising from the sexual contact if the requirements of this section are met.

(b) A video recording may be admitted as provided in subsection (a) if:

(1) The child testifies, under oath, that the offered video recording is a true and correct recording of the events contained in the video recording and the child is available for cross[-]examination;

(2) The video recording is shown to the reasonable satisfaction of the court, in a hearing conducted pre-trial, to possess particularized guarantees of trustworthiness. In determining whether a statement possesses particularized guarantees of trustworthiness, the court shall

-3-

consider the following factors:

(A) The mental and physical age and maturity of the child;

(B) Any apparent motive the child may have to falsify or distort the event, including, but not limited to, bias or coercion;

(C) The timing of the child's statement;

(D) The nature and duration of the alleged abuse;

(E) Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

(F) Whether the statement is spontaneous or directly responsive to questions;

(G) Whether the manner in which the interview was conducted was reliable, including, but not limited to, the absence of any leading questions;

(H) Whether extrinsic evidence exists to show the defendant's opportunity to commit the act complained of in the child's statement;

(I) The relationship of the child to the offender;

(J) Whether the equipment that was used to make the video recording was capable of making an accurate recording; and

(K) Any other factor deemed appropriate by the court;

(3) The interview was conducted by a forensic interviewer who met the following qualifications at the time the video recording was made, as determined by the court:

(A) Was employed by a child advocacy center . . . ;

(B) Had graduated from an accredited college or university with

a bachelor's degree in a field related to social service, education, criminal justice, nursing, psychology or other similar profession;

(C) Had experience equivalent to three (3) years of full[-]time professional work in one [or more of several social services] areas . . . [;]

(D) Had completed a minimum of forty (40) hours of forensic training in interviewing traumatized children and fifteen (15) hours of continuing education annually;

(E) Had completed a minimum of eight (8) hours of interviewing under the supervision of a qualified forensic interviewer of children;

(F) Had knowledge of child development through coursework, professional training or experience;

(G) Had no criminal history as determined through a criminal records background check; and

(H) Had actively participated in peer review;

(4) The recording is both visual and oral and is recorded on film or videotape or by other similar audio-visual means;

(5) The entire interview of the child was recorded on the video recording and the video recording is unaltered and accurately reflects the interview of the child; and

(6) Every voice heard on the video recording is properly identified as determined by the court.
. . . .

(d) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this section.
. . . .

(Emphasis added.)

The Child, who was thirteen years of age and a seventh-grade student by the time of the pre-trial evidentiary hearing, was called as a witness to verify that he had submitted to a video-recorded interview as a part of the investigation. He acknowledged that he had watched the video prior to his testimony and confirmed the truthfulness of his statement. On cross-examination, the Child admitted that he had anger problems, had become physically violent with his mother and others, and that the Defendant, whom he knew from his school, had often been called on to assist him during his episodes of anger.

The Child's mother testified that her son had been diagnosed with bipolar disorder, attention deficit disorder, separation anxiety, and intermittent explosive disorder.[2] She acknowledged that she had called on others, including the Defendant, to assist her son. While she described the Defendant as "like family" initially, she recalled that the relationship deteriorated, and that the Child eventually expressed the desire to end the association.

Anne Post, a forensic interviewer with the Montgomery County Child Advocacy Center, also testified for the State. After confirming that her primary responsibility with the Center was to conduct interviews of children who may have been the victims of abuse, she testified that she had served as a forensic interviewer for eleven years and was a member of the Tennessee State Chapter for Forensic Interviewers. She listed her educational background and training in forensic interviewing and estimated that she had conducted almost 3000 interviews during her professional career. Ms. Post had testified previously in the Montgomery County juvenile courts, other courts in Tennessee, and in the courts of three other states. She stated that she had conducted an interview with the Child on March 31, 2010, compliant with her professional training. The video-recorded interview was made an exhibit at the evidentiary hearing.

At the conclusion of the hearing, the trial court found that the State had fulfilled each of the requirements set forth in Tennessee Code Annotated section 24-7-123, specifically observing that the Child had testified under oath, had viewed the video recording, and had confirmed the truthfulness of his statement. Moreover, the trial court found from its review of the video recording that the Child exhibited a "particularized guarantee of trustworthiness" based upon the following: (a) his mental and physical age and maturity; (b) his lack of any apparent motive to falsify or distort events; (c) the timing of his statement; (d) the nature and duration of the alleged abuse; (e) his spontaneous and direct responsiveness to questions; and

---

[2] Although the Child's mother testified that her son suffered from "imminent" explosive disorder, the record reflects that the correct terminology is "intermittent" explosive disorder, which "involves repeated episodes of impulsive, aggressive, violent behavior[,] or angry verbal outbursts in which [a person] react[s] grossly out of proportion to [a] situation." Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/intermittent-explosive-disorder/basics/definition/con-20024309 (last updated Sept. 18, 2012).

(f) the reliable fashion in which his interview had been conducted. In a detailed order, the trial court further concluded that even though Ms. Post met the statutory qualifications required of a forensic interviewer, the video recording was inadmissible as evidence for the same three reasons set out prior to the original appeal: (1) the intrusion on the exclusive powers of the judiciary; (2) the hearsay nature of the video-recorded statement; and (3) the Confrontation Clause violation.

The trial court again granted an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure. This time, however, the Court of Criminal Appeals denied the State's request for an interlocutory appeal, reasoning that

> because the State will presumably call the [Child] as a witness at trial, the trial court's suppression of the video interview cannot be said to have "eliminate[d] the heart of the State's case." The State has thus not shown how it will be irreparably injured by the trial court's ruling or how the trial court's order has "eliminate[d] any reasonable probability of a successful prosecution." Moreover, the State's use of the interview, or portions thereof, might possibly be permitted under the Rules of Evidence, depending on how the [Child's] testimony unfolds.

State v. McCoy, No. M2013-00912-CCA-R9-CD (Tenn. Crim. App. June 5, 2013) (order denying interlocutory appeal) (second and third alterations in original) (citations omitted). While recognizing that the constitutional issue likely qualified as one of first impression, the Court of Criminal Appeals chose not to address the issue prior to the trial. Id.

On July 3, 2013, the State filed an application with this Court for discretionary review pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, contending that the Court of Criminal Appeals' refusal to grant the interlocutory appeal effectively denied the State the opportunity to either make use of the video recording in the prosecution of the Defendant or to otherwise defend the constitutionality of Tennessee Code Annotated section 24-7-123. Because the constitutionality of the statute presents an issue of first impression and provides the opportunity to resolve an important question of law and settle an issue of public interest, this Court granted the State permission to appeal.

## II. Standard of Review

Generally, questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this Court will not interfere with the exercise of that discretion in the absence of a clear showing of abuse appearing on the face of the record. See State v. DuBose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993). An abuse of discretion occurs when the trial court (1) applies an incorrect

legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence. State v. Mangrum, 403 S.W.3d 152, 166 (Tenn. 2013) (citing Lee Med., Inc. v. Beecher, 312 S.W.3d 515, 524 (Tenn. 2010)).

Issues of statutory and constitutional interpretation, on the other hand, are questions of law, which this Court reviews de novo without any presumption of correctness given to the legal conclusions of the courts below. Waters v. Farr, 291 S.W.3d 873, 882 (Tenn. 2009) (citing Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008)). The Court must uphold the constitutionality of a statute wherever possible, beginning with the presumption that the statute is constitutional. State v. Pickett, 211 S.W.3d 696, 700 (Tenn. 2007) (quoting Gallaher v. Elam, 104 S.W.3d 455, 459 (Tenn. 2003)). "In construing statutes, it is our duty to adopt a construction which will sustain a statute and avoid constitutional conflict if any reasonable construction exists that satisfies the requirements of the Constitution." Davis-Kidd Booksellers, Inc. v. McWherter, 866 S.W.2d 520, 529 (Tenn. 1993). Likewise, the question of whether the admission of certain evidence violates a defendant's right of confrontation is a question of law that we review de novo. State v. Lewis, 235 S.W.3d 136, 141-42 (Tenn. 2007).

### III. Analysis

As noted, the trial court denied admission of the video-recorded interview of the Child on three grounds: (1) by the enactment of Tennessee Code Annotated section 24-7-123, the legislature had violated constitutional principles governing the separation of powers; (2) the content of the video recording qualified as inadmissible hearsay evidence; and (3) the admission of the video recording at trial would violate the Defendant's constitutional right to confront witnesses. We will address each of the issues in turn.

### A. Separation of Powers

The Tennessee Constitution includes two explicit provisions establishing the separation of powers among the three branches of government. Article II, section 1 provides, "The powers of the Government shall be divided into three distinct departments: the Legislative, Executive, and Judicial." Article II, section 2 elaborates, "No person or persons belonging to one of these departments shall exercise any of the powers properly belonging to either of the others, except in the cases herein directed or permitted." While there are no precise lines of demarcation in the respective roles of our three branches of government, the traditional rule is that "the legislative [branch has] the authority to make, order, and repeal [the laws], the executive . . . to administer and enforce, and the judicial . . . to interpret and apply." Underwood v. State, 529 S.W.2d 45, 47 (Tenn. 1975) (quoting Richardson v. Young, 125 S.W. 664, 668 (Tenn. 1910)). By the terms of our constitution, "[o]nly the Supreme Court has the inherent power to promulgate rules governing the practice and procedure of the courts of this state, and this inherent power 'exists by virtue of the [Constitution's]

-8-

establishment of a Court and not by largess of the legislature.'" State v. Mallard, 40 S.W.3d 473, 480-81 (Tenn. 2001) (citation omitted) (quoting Haynes v. McKenzie Mem'l Hosp., 667 S.W.2d 497, 498 (Tenn. Ct. App. 1984)). In this context, this "[C]ourt is supreme in fact as well as in name." Barger v. Brock, 535 S.W.2d 337, 341 (Tenn. 1976).

Based upon these principles, but taking into account considerations of comity among the three branches of government, this Court has exercised measured restraint by repeatedly holding that "[a] legislative enactment which does not frustrate or interfere with the adjudicative function of the courts does not constitute an impermissible encroachment upon the judicial branch of government." Lynch v. City of Jellico, 205 S.W.3d 384, 393 (Tenn. 2006) (alteration in original) (quoting Underwood, 529 S.W.2d at 47). "It is only by remembering the limits of the power confided to the judicial department of the government, and respecting the independence of the other departments, that the judiciary can maintain its own independence in the proper sense of the term[.]" State ex rel. Robinson v. Lindsay, 53 S.W. 950, 952 (Tenn. 1899). Thus, this Court will consent to rules of procedure or evidence that are promulgated by the legislature so long as they "(1) are reasonable and workable within the framework already adopted by the judiciary, and (2) work to supplement the rules already promulgated by the Supreme Court." Mallard, 40 S.W.3d at 481.

In this instance, the issue is whether the legislature acted beyond the scope of its constitutional authority by the adoption of Tennessee Code Annotated section 24-7-123. The Defendant argues that the statute is an unconstitutional attempt to create a legislative exception to the hearsay provisions contained in the Tennessee Rules of Evidence. In our view, however, the statute can be interpreted compatibly with both the Tennessee Rules of Evidence and the Tennessee Constitution.

While the enactment of procedural and evidentiary rules of the courts falls within the judiciary's power, see Mallard, 40 S.W.3d at 480-81; State v. Reid, 981 S.W.2d 166, 170 (Tenn. 1998), we have never held that the legislature has no authority to enact a statute bearing on the introduction of evidence. Indeed, we have recognized the General Assembly's power to do so. See Mallard, 40 S.W.3d at 480 ("The authority of the General Assembly to enact rules of evidence in many circumstances is not questioned by this Court."); see also id. at 485 (acknowledging that a "specific piece of evidence admitted in a specific context for a specific purpose" may prevail over the Tennessee Rules of Evidence). Moreover, Rule 802 of the Tennessee Rules of Evidence explicitly provides that "[h]earsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802 (emphasis added). As noted above, the legislature oversteps its bounds by enacting evidentiary rules only where it "frustrate[s] or interfere[s] with the adjudicative function of the courts." Underwood, 529 S.W.2d at 47.

Section 24-7-123 does not frustrate or interfere with the adjudicative function of Tennessee courts. The provision serves as a specific and limited exception to the general rule against the admission of hearsay evidence, and Rule 802 recognizes that sources of law outside of the Tennessee Rules of Evidence may develop such an exception. Moreover, the statute does not purport to overturn any evidentiary rule or any specific interpretation this Court has provided for such a rule.

Section 24-7-123 also affords trial courts considerable discretion in the determination of whether a video-recorded statement may be admitted as evidence. First, the statute's key language uses permissive instead of mandatory terms, providing that the video recordings "may be considered" at trial. Tenn. Code Ann. § 24-7-123(a) (emphasis added). Second, section 24-7-123(b)(2) requires the trial judge to make a determination of the reliability of the video-recorded statement. While the statute mandates consideration of certain factors in making this determination, it also includes a catch-all provision, allowing the trial judge to take into account "[a]ny other factor deemed appropriate by the court." Id. § 24-7-123(b)(2)(K). For all of these reasons, section 24-7-123 does not constitute an impermissible overreach by the legislature into the judiciary's powers.

While the Defendant cites cases from three other states in support of his separation of powers argument, all are distinguishable. In State v. Robinson, the Arizona Supreme Court struck down a statute that by its terms required the admission of evidence "which is not otherwise admissible by statute or court rule," 735 P.2d 801, 806 (Ariz. 1987), clearly usurping the role of the court in promulgating rules of evidence and determining the admissibility of hearsay, id. at 808. In Cogburn v. State, a concurring justice questioned the constitutionality of a statute on separation of powers grounds, 732 S.W.2d 807, 813 (Ark. 1987) (Purtle, J., concurring), but the majority of the Arkansas Supreme Court upheld the statute and further ruled that the specific statute should have been applied by the trial court instead of the general rule of evidence, id. at 809-11 (majority opinion). Finally, in Hall v. State, 539 So. 2d 1338, 1343-44 & n.11, 1346 (Miss. 1989), the Mississippi Supreme Court struck down a statute that allowed the prosecution to introduce testimony by a child who was not required to be available for cross-examination. The statute also failed to require that the testimony be scrutinized for trustworthiness. Id. at 1342-43.

Tennessee Code Annotated section 24-7-123 is a specific statutory rule of evidence, similar to the statute that was upheld by the majority in Cogburn, which avoids the constitutional concerns at issue in Robinson and Hall. Our statute does not require the admission of video-recorded statements that would otherwise be barred by established law. See Tenn. Code Ann. § 24-7-123(a) ("[A] video recording of an interview of a child . . . may be considered . . . ." (emphasis added)); see also id. § 24-7-123(b) (stating that "[a] video recording may be admitted" if the requisite statutory conditions are met (emphasis added)).

Nor does our statute allow the State to put a child witness on the stand without being subject to cross-examination and scrutiny for trustworthiness. See id. § 24-7-123(b)(1), (2). In our view, therefore, the General Assembly did not encroach upon the powers of the judiciary by the enactment of section 24-7-123.

**B. Hearsay**

The trial court also excluded the Child's video-recorded statement as hearsay evidence not otherwise admissible under any of the exceptions set forth in the Tennessee Rules of Evidence. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c); see also State v. Pate, 1988 WL 81000, at *6 (Tenn. Crim. App. Aug. 3, 1988) (defining hearsay as "'evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein'" (quoting Donald F. Paine, Tennessee Law of Evidence, § 47, at 47)). Whether a particular statement is hearsay is subject to a three-part inquiry:

> (1) the statement must be made out-of-court; (2) the statement must qualify as an assertion; and (3) the statement must be offered to prove the truth of the matter asserted therein. Stated another way, "Does the purpose of the offer require the out-of-court statement to be taken as true?"

Pate, 1988 WL 81000, at *6 (citing Paine, § 47, at 48). Because the value of hearsay evidence rests upon the credibility of the declarant, an out-of-court statement does not qualify as hearsay evidence if it "was offered not to prove the truth of its content . . . but . . . to show its effect on the hearer . . . without regard to its truth or falsity." State v. Furlough, 797 S.W.2d 631, 647 (Tenn. Crim. App. 1990) (alterations in original) (quoting State v. Laird, 565 S.W.2d 38, 41 (Tenn. Crim. App. 1978)) (internal quotation marks omitted). If the evidence does qualify as hearsay, it is not admissible. Tenn. R. Evid. 802; see also State v. Barajar, No. M2003-02844-CCA-R3-CD, 2005 WL 176493, at *6 (Tenn. Crim. App. Jan. 27, 2005) ("Hearsay . . . is generally inadmissible." (citing Tenn. R. Evid. 802)). Numerous exceptions, however, exist to this "general rule of exclusion." State v. Dishman, 915 S.W.2d 458, 461 (Tenn. Crim. App. 1995); see Tenn. R. Evid. 803(1.1)–(26), 804, 805. In addition to the hearsay exceptions specifically identified by the Tennessee Rules of Evidence, Rule 802 also allows for exceptions as may be "provided . . . otherwise by law."

By the application of these principles, the video-recorded interview of the Child qualifies as hearsay evidence. First, the statement was obviously made out of court—the Child was interviewed by Ms. Post at the Montgomery County Child Advocacy Center as part of the initial investigation. Second, the video-recorded statement qualifies as an assertion made by the Child to describe acts of sexual contact with the Defendant. Finally,

-11-

the purpose of the video recording is to prove the truth of the statement asserted therein. That is, the recording is offered as evidence in order to establish that the Defendant did in fact commit the acts of sexual contact. Because the recording qualifies as hearsay evidence, as the trial court determined, it "is not admissible except as provided by [the Tennessee Rules of Evidence] or otherwise by law." Tenn. R. Evid. 802.

The trial court ruled that the video recording did not fit within any exception to the general rule of excluding hearsay evidence. We disagree. Although the video recording does not qualify as one of the specifically recognized hearsay exceptions, Tennessee Rule of Evidence 802 provides for admission if allowed "otherwise by law." See also Mallard, 40 S.W.3d at 480 (recognizing the power of the General Assembly to enact statutes bearing on the introduction of evidence). We have determined that the legislature acted within its constitutional limits by enacting Tennessee Code Annotated section 24-7-123 as a specific and limited exception to the general rule against the admission of hearsay evidence. At the pre-trial evidentiary hearing upon remand after the original appeal, the trial court concluded that each of the statutory requirements had been fulfilled by the State. Therefore, the recorded statement, although falling within the definition of hearsay, is admissible under section 24-7-123 as a valid legislative exception to the general rule of excluding hearsay evidence.

### C. Right of Confrontation

Even if hearsay evidence is deemed admissible under the Tennessee Rules of Evidence, a defendant may assert that his state and federal constitutional right of confrontation bars admission of the evidence at trial. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Likewise, article I, section 9 of the Tennessee Constitution provides "[t]hat in all criminal prosecutions, the accused hath the right . . . to meet the witnesses face to face." Initially, the Defendant contends that the "face to face" language in article I, section 9 extends greater confrontation rights than the Sixth Amendment. We recently explained the relationship between these state and federal constitutional provisions as follows:

> The phrasing of the state constitutional provision differs from the text of the Sixth Amendment and has been described as imposing "a higher right than that found in the federal constitution." State v. Deuter, 839 S.W.2d 391, 395 (Tenn. 1992). However, when deciding claims based on the right of confrontation provided in article I, section 9, we have expressly adopted and applied the same analysis used to evaluate claims based on the Confrontation Clause of the Sixth Amendment. State v. Parker, 350 S.W.3d 883, 898 (Tenn. 2011); State v. Franklin, 308 S.W.3d 799, 809-10 (Tenn. 2010); State v.

Cannon, 254 S.W.3d 287, 301 (Tenn. 2008); State v. Lewis, 235 S.W.3d 136, 145 (Tenn. 2007).

State v. Dotson, No. W2011-00815-SC-DDT-DD, 2014 WL 4825169, at *50 (Tenn. Sept. 30, 2014) (footnote omitted). In Dotson, however, we noted that "[t]he defendant ha[d] not argued that the Tennessee Constitution affords greater protection or that a different standard governs our analysis of his state constitutional claim." Id. at *50 n.31. In this instance, because the Defendant has raised the issue directly, and because the trial court ruled that article I, section 9 does in fact create greater constitutional protections than the Sixth Amendment, we take this opportunity to address the nature and extent of confrontation rights afforded by the state and federal constitutions.

Traditionally, this Court has interpreted the right of confrontation as affording "two types of protection for criminal defendants: the right to physically face the witnesses who testify against the defendant, and the right to cross-examine witnesses." State v. Williams, 913 S.W.2d 462, 465 (Tenn. 1996) (citing State v. Middlebrooks, 840 S.W.2d 317, 332 (Tenn. 1992); Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987)). Although this Court has on occasion indicated that article I, section 9 may require more than the Federal Confrontation Clause in some circumstances, we have never determined the extent of the protections. See State v. Stephenson, 195 S.W.3d 574, 591 (Tenn. 2006), abrogated on other grounds by State v. Watkins, 362 S.W.3d 530 (Tenn. 2012); Deuter, 839 S.W.2d at 396. When addressing the requirements of article I, section 9, Stephenson merely cited to Deuter with little discussion. See Stephenson, 195 S.W.3d at 591. In Deuter, although this Court suggested that article I, section 9 may provide stricter requirements than the Federal Confrontation Clause, this discussion took place within the context of Maryland v. Craig, 497 U.S. 836 (1990). The Craig Court addressed whether a child witness could permissibly testify via live, one-way, closed-circuit television, where the witness could not see the defendant, the defendant could communicate with counsel, and the defendant's counsel could engage in contemporaneous cross-examination. See id. at 840-44. The circumstances under which witnesses can testify at trial consistently with the defendant's confrontation rights, however, is an entirely different issue than when a court may admit prior statements as evidence against a defendant. In this instance, we address the latter issue.

The Confrontation Clause is designed "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Id. at 845. For years, Sixth Amendment challenges to out-of-court statements were considered under the guidelines established by Ohio v. Roberts, 448 U.S. 56 (1980), in which the United States Supreme Court held that "when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable," id. at 66. The Roberts Court further held that even

when there is a showing of unavailability, the hearsay statement "is admissible only if it bears adequate 'indicia of reliability.'" Id.

In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court departed from its ruling in Roberts and established a new standard for determining when hearsay statements of an unavailable witness may be admitted as evidence against a criminal defendant consistently with the Confrontation Clause. The standard set forth in Crawford actually expanded defendants' confrontation rights beyond what was contemplated in Roberts. Compare Crawford, 541 U.S. at 53-55 (requiring unavailability and a prior opportunity for cross-examination to admit testimonial hearsay statements of witnesses not appearing at trial), with Roberts, 448 U.S. at 72-73 (holding that witness' hearsay statements may be admitted whenever they bear "sufficient indicia of reliability," even without cross-examination). Prior to the decision in Crawford, this Court read article I, section 9 to generally provide for the same protections as established in Roberts, 448 U.S. at 66. See, e.g., State v. Howell, 868 S.W.2d 238, 251 (Tenn. 1993); State v. Causby, 706 S.W.2d 628, 631 (Tenn. 1986). In our assessment, therefore, article I, section 9 does not impose any restrictions on admitting hearsay statements beyond those of the Sixth Amendment, as interpreted by Crawford and its progeny. "Thus, we will unitarily analyze the [D]efendant's federal and state constitutional claims, as the same standards govern both." Dotson, 2014 WL 4825169, at *50.

"[T]he threshold question in every case where the Confrontation Clause is relied upon as a bar to the admission of an out-of-court statement is whether the challenged statement is testimonial." Id. at *51 (citing State v. Cannon, 254 S.W.3d 287, 301 (Tenn. 2008)); see also Crawford, 541 U.S. at 51-52. The Court in Crawford determined that statements qualify as testimonial when "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52. Certain types of evidence fall easily within the definition of "testimonial," including "*ex parte* in-court testimony[,] . . . affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, . . . depositions, . . . confessions," and "[s]tatements taken by police officers in the course of interrogations." Id. (internal quotation marks omitted). On the opposite end of the spectrum, "off-hand, overheard remark[s]," "business records," and "statements in furtherance of a conspiracy" are squarely non-testimonial under the Crawford standard. See id. at 51, 56.

In Davis v. Washington, 547 U.S. 813, 826 (2006), the Court further explained the "testimonial" definition, holding that the products of "interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator," regardless of whether they were reduced to writing, are testimonial under Crawford. On the other hand, the Davis Court observed that statements are non-testimonial

if their "primary purpose" was to provide "assistance [in] meet[ing] an ongoing emergency." Id. at 822. The relevant inquiry relates to the primary purpose of the statements and is objective, focusing on the "circumstances in which [an] encounter occurs" and the "statements and actions" of both the declarant and the interrogator. Michigan v. Bryant, 131 S. Ct. 1143, 1156 (2011).

If a hearsay statement is non-testimonial, the declarant is not a "'witness' within the meaning of the Confrontation Clause," and the statement may be admitted, subject to the other restrictions on hearsay evidence. Davis, 547 U.S. at 821; Lewis, 235 S.W.3d at 143. When a hearsay statement is testimonial, however, the party seeking to admit the statement must either (1) present the declarant as a witness who will testify and submit to cross-examination or (2) show that the witness is "unavailable to testify, and [that] the defendant had . . . a prior opportunity for cross-examination." Crawford, 541 U.S. at 53-55.[3]

If the witness is available at trial for cross-examination, "the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." Id. at 59 n.9 (citing California v. Green, 399 U.S. 149, 162 (1970)); Dotson, 2014 WL 4825169, at *52; State v. Banks, 271 S.W.3d 90, 118 (Tenn. 2008). Although the Confrontation Clause does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," it does require that a defendant be given "an opportunity for effective cross-examination" of the witness. United States v. Owens, 484 U.S. 554, 559 (1988) (quoting Kentucky v. Stincer, 482 U.S. 730, 739 (1987)). In this context, the Crawford Court concluded that in order to satisfy the Confrontation Clause, the witness must be "present at trial to defend or explain" the prior testimonial statements. Crawford, 541 U.S. at 59 n.9.

Within this framework, the first question in the case before us is whether the video-recorded statement the State seeks to have admitted at trial is testimonial under Crawford. See Dotson, 2014 WL 4825169, at *51. We hold that it is. Section 24-7-123(a) contemplates that video-recorded statements made to forensic interviewers will be used at trial to establish "act[s] of sexual contact performed with or on the child by another." In this regard, the video-recorded statements are the functional equivalent of in-court testimony. Further, the director of the Montgomery County Child Advocacy Center testified that the

---

[3] There are two exceptions to Crawford's general analysis, neither of which is implicated here. First, hearsay statements properly classified as dying declarations may be admitted as evidence in a criminal trial despite the fact that they are testimonial and the defendant had no prior opportunity for cross-examination. See id. at 56 n.6; Lewis, 235 S.W.3d at 147-48. Second, the Crawford Court recognized that an exception to its general analysis exists when a witness is made unavailable through the defendant's own wrongdoing. See Crawford, 541 U.S. at 62.

Center, which is a tax-exempt governmental entity, was created for "team[s] of investigators, [the Department of Children's Services,] law enforcement, [and] the [District Attorney's] office, [to] come together to investigate severe [child] abuse." Because the interview took place at the Center without any present threat of harm to the Child, there was no "ongoing emergency." Thus, the Child's video-recorded statement qualifies as testimonial.

Because the video-recorded statement is testimonial, Crawford requires that the Child be unavailable and that the Defendant had a prior opportunity for cross-examination before the statement may be admitted—unless the Child is made available at trial to defend or explain the statement upon cross-examination by the Defendant. See Crawford, 541 U.S. at 53-55. During argument before this Court, the State conceded that section 24-7-123 does not allow the admission of video-recorded statements when the witness is unavailable. The State further conceded that section 24-7-123(b)(1) requires the witness to authenticate the video recording before it is submitted, and to be available for cross-examination at trial. We agree this is the proper construction of the statutory text. In consequence, we hold that the only circumstance under which a child victim's video-recorded statements may be admitted in a manner consistent with both section 24-7-123 and the right of confrontation is when the witness first authenticates the video recording and then appears for cross-examination at trial to defend or explain the prior recorded statements.

The Defendant further challenges the constitutionality of section 24-7-123 under the Confrontation Clause by relying on our decisions in State v. Pilkey, 776 S.W.2d 943 (Tenn. 1989), and State v. Deuter, 839 S.W.2d 391 (Tenn. 1992). Both cases are distinguishable. The Court in Pilkey and Deuter considered Confrontation Clause challenges to a statute which preceded the enactment of section 24-7-123. Deuter, 839 S.W.2d at 392; Pilkey, 776 S.W.2d at 943-44. Section 24-7-123's predecessor did not allow for proper cross-examination of the child witness because it "forced [a defendant] to call the child, if desired, as a witness for direct examination." See Pilkey, 776 S.W.2d at 948. Moreover, in Deuter, the child witnesses could not provide "information as to when, where, or under what circumstances the acts occurred." Deuter, 839 S.W.2d at 394. Finally, both Pilkey and Deuter were decided under pre-Crawford standards, which no longer apply to our analysis of confrontation rights. In those two cases, therefore, the defendants did not have the opportunity for effective cross-examination as required by Crawford and its progeny.

Our interpretation of section 24-7-123 also is consistent with the rulings of other state courts analyzing similar statutes that specifically authorize the admission of prior video-recorded testimony in child abuse cases. Louisiana's statute, which is similar to our section 24-7-123, provides that a video-recorded statement by a child victim under the age of seventeen may be admitted into evidence if (1) the witness voluntarily made the recording; (2) the recording does not include answers to interrogatories that contained leading questions;

-16-

(3) the recording is accurate and reflects what the child said; and (4) the making of the recording was supervised by a statutorily-specified professional, such as a social worker or authorized representative of the Department of Children and Family Services. La. Rev. Stat. Ann. § 15:440.4(1), (3)–(5). Further, if the recording was made prior to the trial, the party seeking admission must assure that the child witness is available to testify. Id. § 15:440.5(8). In 2011, the Louisiana Court of Appeals determined that the admission of a video-recorded interview of a child witness did not violate the right of confrontation where the "juvenile victim was available [at trial] and provided meaningful answers to defense counsel's questions on cross-examination regarding the facts that gave rise to the offense." State v. Hawkins, 78 So. 3d 293, 299 (La. Ct. App. 2011), writ denied, 85 So. 3d 1246 (La. 2012).

Wisconsin also has a statute that is much like section 24-7-123 and allows for the admission of a video-recorded statement of a child under certain circumstances. For example, before such prior statements may be admitted, the following provisions must be met: (1) the child witness is of the requisite age; (2) the recording is accurate; (3) the child's statement was made upon oath of affirmation; and (4) the time, content, and circumstances of the statement provide an indicia of its trustworthiness. Wis. Stat. Ann. § 908.08(3)(a)(1)–(2), (b)–(d). The court also has the discretion to consider other factors in determining if the interests of justice warrant the admission of the video-recorded statement of a child, such as: (1) the child's chronological age, level of development, and capacity to comprehend the significance of events and to verbalize them; (2) the child's general physical and mental health; and (3) the child's relationship to the person about whom the statement is made. Id. § 908.08(4)(a)–(e). In 2005, the Wisconsin Court of Appeals held that this statute did not violate the right of confrontation because it requires that the defendant be given the opportunity for cross-examination. State v. James, 703 N.W.2d 727, 733 (Wis. Ct. App. 2005).

Consistent with these decisions, we hold that notwithstanding the testimonial nature of video-recorded statements taken pursuant to Tennessee Code Annotated section 24-7-123, the admission of these statements does not violate a defendant's right of confrontation so long as the child witness authenticates the video recording and appears for cross-examination at trial, as required by our statute.

## IV. Conclusion

Because Tennessee Code Annotated section 24-7-123 does not violate constitutional standards and is a valid legislative exception to the Tennessee Rules of Evidence governing hearsay evidence, the Child's video-recorded statement may be admitted at trial, provided that the evidence is relevant and otherwise comports with the requirements of section 24-7-123 and the Tennessee Rules of Evidence. The judgment of the trial court is, therefore, reversed and the cause remanded for further proceedings consistent with this opinion. Costs

of this appeal are taxed to Barry D. McCoy and his surety, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE