IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 8, 2025

**STATE OF TENNESSEE v. ANTHONY T. BRADEN**

**Appeal from the Circuit Court for Humphreys County**
**No. 13438     David D. Wolfe, Judge**
_____

**No. M2024-01224-CCA-R3-CD**
_____

Defendant, Anthony T. Braden, was convicted by a Humphreys County jury of two counts of aggravated sexual battery. The trial court imposed an effective ten-year sentence. Defendant appeals, arguing that the trial court committed plain error in finding that the victim had properly authenticated the video-recorded forensic interview under Tennessee Code Annotated section 24-7-123(b)(1). Upon our review of the entire record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Steven S. Hooper, District Public Defender, and Justin C. Sensing, Assistant Public Defender, Ashland City, Tennessee (on appeal), and Olin Jon Baker, Charlotte, Tennessee (at trial), for the appellant, Anthony T. Braden.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Ray Crouch, District Attorney General; and Joseph L. Hornick, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

On June 6, 2016, a Humphreys County grand jury returned a three-count indictment charging Defendant with two counts of aggravated sexual battery (counts one and two) and rape of a child (count three). T.H.[1] was the named victim in each count.

---

[1] Because it is the policy of this court to protect the identity of minor victims, we will identify the victim by her initials.

Prior to trial, Defendant filed a "Motion to be Declared Indigent for the Purpose of Hiring an Expert Witness," asserting, in part, that it was necessary to have a "a forensic interviewer review the methods and techniques followed by the state's forensic interview in examining the child." He argued that "[w]ithout this expert assistance, a key element of the defense cannot be developed, that the forensic interview of the child was flawed and unreliable." After a hearing, the trial court denied the motion, finding that Defendant made approximately $35,000 per year, which was "far from indigent by Humphreys County standards."

On May 22, 2019, the trial court conducted a hearing regarding the admissibility of the victim's forensic interview. The forensic interview was made an exhibit to the hearing.

T.H. testified that she had watched the entire video-recorded forensic interview prior to her testimony and identified herself and "Ms. Jessica" as the people seen in the video. She affirmed that the statements made during the forensic interview were hers and that no one told her what to say. On cross-examination, T.H. stated that she did not remember a lot about the day of the interview because it had "been a while ago." She agreed that she was asked some questions that suggested an answer and that she felt she was "kind of given the answer when [she] was asked those questions[.]"

The parties stipulated that Jessica Tigert was a qualified forensic interviewer at the time she conducted the interview with T.H. Ms. Tigert affirmed that she had watched the entire interview, that the entire unaltered interview had been played for the court, that no other person was present in the interview room, and she identified the voices in the video as her's and T.H.'s.

T.H.'s mother testified that at the time of the offenses, she was involved in a romantic relationship with Defendant. T.H.'s mother and Defendant did not live together but frequently stayed at each other's residences. According to T.H.'s mother, Defendant was alone with T.H. when T.H.'s mother was asleep and when Defendant took T.H. to school.

The trial court found that the forensic interview possessed particularized guarantees of trustworthiness. It noted that T.H. "was mature enough and had the mental and physical age that would allow her to testify and give that statement with some truthfulness." It further found that T.H. did not have motive to falsify her statements, that the timing of the statements did not raise trustworthiness concerns, that the alleged abuse occurred over three instances, and that T.H.'s statements were responsive to questions rather than spontaneous.

The trial court also found that the manner of the interview was reliable, specifically noting that "the overall interview was clearly conducted in a manner that was not leading

and not suggesting to [T.H.] what she should say" and that the equipment was capable of making an accurate recording. The trial court further found that extrinsic evidence showed that Defendant had the opportunity to commit the offenses based on Defendant's relationship with T.H.'s mother. The trial court found that Ms. Tigert was a qualified forensic interviewer. It noted that the recording was both visual and oral, the recording accurately reflected the entire unaltered interview, and that every voice on the recording had been identified. The trial court noted that the audio of the video needed "some improvements," and T.H. needed to be available for cross-examination at trial for the video-recorded interview to be admissible. The trial court subsequently entered a written order reflecting its oral findings. Neither the trial court's oral findings nor its written order, included a specific finding that the victim had testified "under oath, that the offered video recording is a true and correct recording of the events contained in the video recording[.]" *See* T.C.A. § 24-7-123(b)(1).

The case proceeded to trial on April 12 and 13, 2023.[2] At trial, Waverly Police Department ("WPD") Detective Michael Hubbs testified that he received a Department of Children's Services ("DCS") referral regarding T.H. on March 2, 2016. Detective Hubbs observed T.H.'s forensic interview via live video feed and then interviewed T.H.'s mother. T.H.'s mother denied being present during any of the alleged sexual abuse. Detective Hubbs did not speak to T.H. during the investigation because he tried "to stay out of it and let the people that are trained to talk to smaller children do that." He agreed that there was no physical evidence in this case.

On the morning of March 16, 2016, Detective Hubbs interviewed Defendant. He advised Defendant of his rights, and Defendant signed a waiver of rights form; the signed waiver of rights form was introduced into evidence. Defendant denied the allegations and stated that he and T.H. had a good relationship. Defendant described T.H. as smart and denied that T.H. "embellishe[d] or told stories." Defendant denied using corporal punishment on T.H. Detective Hubbs did not speak to Defendant again after the March 16 interview.

Ms. Tigert testified that she conducted a forensic interview with T.H. at the Waverly DCS office on March 3, 2016. She identified herself and T.H. in the video recording of T.H.'s forensic interview. She affirmed that this was the only interview she conducted with T.H. Ms. Tigert identified "anatomical drawings" of a boy and a girl that she used during her interview with T.H. She explained that "if children don't use the correct given name for a body part[,] we will use the picture so we can know exactly what they're talking about."

---

[2] It appears from the transcript of the sentencing hearing that the delay between the pretrial hearing and trial was due to the COVID-19 pandemic.

T.H. was fourteen at the time of trial and testified that she knew Defendant because he had dated her mother; she identified him in court. T.H. recognized the video recording of her forensic interview and identified herself and Ms. Tigert. She explained that she was seven years old at the time of the interview. T.H. also identified the anatomical drawings previously identified by Ms. Tigert; the drawings were admitted into evidence.

The video of the forensic interview was then played for the jury. In the video, T.H. can be seen drawing with markers. T.H. stated that "Anthony" had visited a lot in the past but that she did not see him anymore. When asked to explain why she did not see him anymore, T.H. responded, "That's a question I can't answer" because "it's kind of embarrassing." T.H. explained that when she and her mother stayed at Defendant's house, she would sleep in the bed with Defendant and her mother but sometimes her mother would sleep on the couch. T.H. affirmed that something "embarrassing" happened when her mother slept on the couch and that it had happened more than once. On the Thursday prior to the interview, T.H. and her mother stayed at Defendant's house. After T.H. went to bed, her mother fell asleep on the couch, and Defendant lay with T.H. in the bed. Defendant touched T.H.'s "front private part" "on the skin" with his hands, which she explained "hurt." T.H. stated that the same thing had happened "last week's Sunday" in her bedroom at her mother's house. After a brief break, Ms. Tigert showed T.H. the anatomical drawings. When asked to circle what she meant when she referred to her "front private part," T.H. circled the vaginal area on the anatomical drawing of the girl. When Ms. Tigert asked T.H. if Defendant had touched her with any other part of his body, T.H. circled the penis on the boy anatomical drawing, which she described as his "private part."

After the forensic interview was played, T.H. testified that she "kind of" remembered the interview. T.H. testified that Defendant had touched her "private parts" under her clothes and "moved his fingers" once at Defendant's house and once at her mother's house. T.H. agreed that she told Ms. Tigert that Defendant had touched his penis to her "private part" in the forensic interview, but she did not remember that incident at the time of trial. She explained that she was not "saying it didn't happen. [She was] just saying [she] couldn't give you any[]more detail than what you watched there." T.H. recalled that Ms. Tigert had emphasized that she needed to tell the truth during the interview. T.H. affirmed that she knew the difference between the truth and a lie and that she had told the truth.

The State then rested its case, and the trial court denied Defendant's motion for judgment of acquittal.

T.H.'s mother testified for the defense and stated that T.H. had started "acting out" around the time of the accusations. She believed T.H. was acting out "to get attention." T.H.'s mother explained that "like any seven[-]year[-]old, [T.H.] didn't want to get in

trouble" so T.H. would "lie about something." T.H.'s mother denied that she had any concerns about her children visiting Defendant.

Renee Brewer, Defendant's mother, testified T.H. would "tell little lies" such as whether she had eaten or not or whether she was at Ms. Brewer's house. On cross-examination, Ms. Brewer agreed that T.H.'s accusations in this case were "larger accusation[s]" than some of T.H.'s "little lies" about which Ms. Brewer had testified.

Defendant testified that he was at work when T.H. made the accusations and found out about them later from Ms. Brewer. Defendant stated that he "[n]ever" touched T.H. in a sexual way. He explained that he and T.H. had a "great" relationship. Approximately two weeks prior to the accusations, Defendant noticed that T.H.'s behavior had changed to "attention getting [and] a little bit of anger."

Based on the above evidence, the jury found Defendant guilty of aggravated sexual battery as charged in counts one and two, and not guilty of rape of a child and all lesser-included offenses in count three. After a sentencing hearing, the trial court imposed concurrent ten-year sentences for each count. Defendant filed a timely motion for new trial, which was denied on July 19, 2024.

Defendant's appeal is now before this court.

**Analysis**

Defendant argues that the trial court erred in admitting the video-recorded forensic interview because T.H. did not properly authenticate the video as required by Tennessee Code Annotated section 24-7-123(b)(1). Specifically, he argues that "several cases imply that the statute also requires the child to affirm the truthfulness of his or her statements contained in the video," which T.H. did not do. The State asserts that the trial court properly admitted the video after making the required statutory findings. We agree with the State.

Defendant concedes that he is limited to plain error review because he failed to raise this issue of authentication in his motion for new trial. *See* Tenn. R. App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial[.]"). To be entitled to plain error relief, a defendant must establish five requirements:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial

right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*State v. Worley*, No. M2023-00867-CCA-R3-CD, 2025 WL 101656, at *12 (Tenn. Crim. App. Jan. 15, 2025) (quoting *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000)), *perm. app. pending*. Because this court will only grant plain error relief when all five factors have been established, we need not consider all factors if it is clear from the record that at least one factor cannot be established. *Smith*, 24 S.W.3d at 283. Plain error relief should be "sparingly exercised." *State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). Thus, plain error relief is only warranted when the error was "of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994) (quoting *United State v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)).

Here, the record clearly establishes what occurred in the trial court. Defendant asserts that the trial court's failure to make a specific finding regarding T.H.'s authentication of the video prior to allowing the video to be admitted as substantive evidence of his guilt breached a clear and unequivocal rule of law because Tennessee Code Annotated section 24-7-123 is an exception to the hearsay exclusionary rule.

As relevant to this case, a video recorded forensic interview of a child under eighteen years of age that contains a statement describing an act of sexual contact performed on the child "is admissible and may be considered for its bearing on any matter to which it is relevant in evidence at any stage of a criminal proceeding[.]" T.C.A § 24-7-123(a). The trial court "shall make specific findings of fact, on the record, as to the basis for its ruling under this section." T.C.A. § 24-7-123(d). Our supreme court has stated that this statute "serves as a specific and limited exception to the general rule against the admission of hearsay evidence[.]" *State v. McCoy*, 459 S.W.3d 1, 10 (Tenn. 2014). Although the statute outlines various requirements for the admissibility of the video recorded forensic interview, Defendant's challenge on appeal focuses on whether T.H. sufficiently authenticated the video recording under subsection (b)(1). Thus, we will limit our review accordingly.

Subsection (b)(1) requires that "[t]he child testif[y], under oath, that the offered video recording is a true and correct recording of the events contained in the video recording and the child is available for cross[-]examination[.]" T.C.A. § 24-7-123(b)(1). The child must authenticate the video *before* it is played for the jury. *State v. Stegall*, No. W2022-00628-CCA-R3-CD, 2023 WL 6319610, at *7 (Tenn. Crim. App. July 14, 2023), *reh'g denied* (Sept. 27, 2023). Such authentication may occur either at a pretrial hearing or at trial prior to the video being played for the jury. *State v. Ruzicka*, No. W2023-00134-CCA-R3-CD, 2024 WL 3387294, at *10 (Tenn. Crim. App. July 12, 2024) (denying plain

error relief where the victim had authenticated the forensic interview recording at the pretrial hearing because the State was not required to reauthenticate the recording at trial), *no perm. app. filed.*

As with other evidentiary challenges, this court reviews a trial court's decision regarding the admissibility of a forensic interview for an abuse of discretion. *State v. Franklin*, 585 S.W.3d 431, 448 (Tenn. Crim. App. 2019). "An abuse of discretion occurs when the trial court (1) applies an incorrect legal standard; (2) reaches an illogical or unreasonable decision; or (3) bases its decision on a clearly erroneous assessment of the evidence." *Worley*, 2025 WL 101656, at *11 (quoting *McCoy*, 459 S.W.3d at 8). However, "when a trial court fails to make complete factual findings on the record," our review is de novo. *State v. Rodriguez*, No. W2022-00894-CCA-R3-CD, 2023 WL 3296376, at *3 (Tenn. Crim. App. May 8, 2023) (citing *State v. Lovin*, No. E2021-00705-CCA-R3-CD, 2022 WL 2078579, at *7-8 (Tenn. Crim. App. Aug 3, 2022), *no perm. app. filed*), *no perm. app. filed*; *State v. Tyler*, No. W2015-00161-CCA-R3-CD, 2016 WL 1756419, at *6 (Tenn. Crim. App. Apr. 29, 2016); *see Stegall*, 2023 WL 6319610, at *8 (finding that the defendant did not refrain from objecting to the admission of the forensic interview for tactical reasons because "[h]ad he objected at trial, this court would review the issue de novo rather than under plain error").

Defendant relies upon *State v. Tyler*, No. W2015-00161-CCA-R3-CD, 2016 WL 1756419, at *5-6 (Tenn. Crim. App. Apr. 29, 2016), to support his contention that the trial court's failure to make a specific finding that T.H. had properly authenticated the recording under subsection (b)(1) warrants de novo review. In *Tyler*, the trial court "ruled that the video of the forensic interview was admissible provided that the victim testified and was available for cross-examination" but failed to make more specific factual findings. *Id.* at *6. After determining that "the result of the trial court's not making factual findings on the record is that our review is purely *de novo*, rather than abuse of discretion," this court upheld the admission of the forensic interview. *Id.* By contrast, in this case, the trial court made extensive findings of fact regarding subsections (b)(2) through (b)(6) and noted that T.H. would be required to be available for cross-examination at trial. The trial court's detailed findings are far from "conclusory statements" and reflect thorough consideration of the statutory requirements. *See State v. Lovin*, No. E2021-00705-CCA-R3-CD, 2022 WL 3078579, at *7-8 (Tenn. Crim. App. Aug. 3, 2022) (reviewing de novo whether the recording presented particularized guarantees of trustworthiness because the trial court made only "conclusory statements that the court found the victim's behavior and the interview, 'typical,' 'normal,' and 'classic'"), *no perm. app. filed*. We will review the trial court's decision for an abuse of discretion.

Defendant further claims that this court has created an implicit requirement that the child affirm the truthfulness of his or her statements made during a forensic interview. As

pointed out in Defendant's brief, some of this court's opinions regarding the admissibility of forensic interviews note that the child testified that his or her statements in the video are true. However, we disagree with Defendant that any of the cases he cites imply a requirement that the child affirm the truthfulness of statements made in a forensic interview. *See McCoy*, 459 S.W.3d at 7 (noting in the factual section of the opinion that the trial court found the forensic interview admissible in part because the child "had testified under oath, had viewed the video recording, and had confirmed the truthfulness of his statement"); *State v. Franklin*, 585 S.W.3d 431, 454 (Tenn. Crim. App. 2019) (noting, after holding that the trial court properly admitted the forensic interview, that the victim also testified at the pretrial hearing that she "remembered the events that she talked about in the video, and she said that she was telling the truth during the interview"); *Stegall*, 2023 WL 6319610, at *7 (noting that although the victim testified "that she told the truth at the interview," such testimony occurred after the video was played for the jury and was not proper authentication under the statute); *State v. Blackwell*, No. W2018-01233-CCA-R3-CD, 2019 WL 2486228, at *7 (Tenn. Crim. App. June 13, 2019) (affirming that the victim properly authenticated the video as an accurate depiction of the interview in part because she testified that "she was telling the truth when she answered the questions on the video, although she could not remember the questions and answers at this point in time"). Further, this court has previously held that there was no breach of a clear and unequivocal rule of law when the victim did not testify that her statements in the forensic interview were true. *Ruzicka*, 2024 WL 3387294, at *10. Finally, such a rule would be inconsistent with the plain language of the statute which does not require that the victim affirm the truthfulness of his or her statements. Defendant has not established that a clear and unequivocal rule of law was breached.

Defendant has failed to show that he did not waive the specific issue of authentication of the video-recorded interview for tactical reasons. As noted by Defendant, the record shows that he "clearly and repeatedly opposed admission of the video-recorded interview" both before trial and in his motion for new trial. However, while Defendant's oral argument at the motion for new trial hearing and the trial court's ruling "touched upon the admissibility of the forensic interview," his argument did not raise the issue of T.H.'s authentication of the video, and thus the trial court's ruling did not address the issue. Based on the record before this court, it is clear that Defendant understood the importance of the forensic interview and challenged its admission on other grounds. Defendant has failed to establish that he did not waive his challenge under subsection (b)(1) of the statute in favor of what he perceived as a stronger challenge. He has failed to establish that he did not waive the issue for tactical reasons.

Finally, Defendant has failed to show that a substantial right has been adversely affected or that consideration of the issue is necessary to do substantial justice. To do so, Defendant must prove that admission of the forensic interview "affected the outcome of

the trial court proceedings." *State v. Rimmer*, 623 S.W.3d 235, 278 (Tenn. 2021); *State v. Majors*, 318 S.W.3d 850 (Tenn. 2010) (quoting *Smith*, 24 S.W.3d at 282-83) (explaining that substantial justice is at stake when "the error was so significant that it 'probably changed the outcome of the trial'"). T.H. testified at trial that Defendant had touched her "private parts" with his hands under her clothing on two separate occasions. Thus, the jury heard evidence other than the forensic interview to support Defendant's convictions. Notedly, the jury found Defendant not guilty of rape of a child, which was the only offense that rested entirely on the forensic interview because at trial, T.H. testified that she did not remember Defendant's touching her with his penis.

Defendant has failed to prove plain error in the trial court's admission of the forensic interview. Defendant is not entitled to relief.

## CONCLUSION

For the foregoing reasons, the judgments of the trial court are affirmed.


s/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE