IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 25, 2020

**STATE OF TENNESSEE v. CRAIG RICKARD**

**Appeal from the Circuit Court for Cheatham County**
**No. 18485    Suzanne Lockert-Mash, Judge**

———————————————————

**No. M2019-01207-CCA-R3-CD**

———————————————————

The Defendant, Craig Rickard, was convicted by a Cheatham County Circuit Court jury of rape of a child and aggravated sexual battery and was sentenced pursuant to a plea-bargained sentencing agreement to an effective term of twenty-five years at 100% in the Department of Correction.  On appeal, he argues that the trial court erred by admitting the video recordings of the victim's forensic interviews, in not conducting a jury out hearing to determine the victim's qualifications as a witness, and by suggesting to the prosecutor the manner in which a question could be posed in order to avoid the Defendant's hearsay objection.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

William B. Lockert, III, Nashville, Tennessee (on appeal), and Mitchell B. Dugan and Matt Mitchell, Ashland City, Tennessee (at trial), for the appellant, Craig Rickard.

Herbert H. Slatery III, Attorney General and Reporter; Andree S. Blumstein, Solicitor General; Sarah K. Campbell, Associate Solicitor General:  Ray Crouch, District Attorney General; and David W. Wyatt, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**<u>FACTS</u>**

This case arises out of the Defendant's sexual molestation of the victim,[1] his seven-year-old step-granddaughter, which began after the Defendant's wife, the victim's grandmother, had died. Because the victim's father, a single parent, worked long and varied hours, the victim slept at the grandmother and the Defendant's home during the school week so that they could get her to the school bus in the mornings. After the grandmother's death, the Defendant continued that practice. One day after the grandmother's death, the distraught victim revealed to her father that the Defendant had touched her genital area and had made her put her mouth on his penis. The victim made a similar revelation to her paternal aunt.

The victim was subsequently interviewed by three professionals: Jessica Tigert, a forensic interviewer with the Twenty-Third Judicial District's Child Advocacy Center; Dr. Lisa Milam, a forensic social worker at "Our Kids Center" in Nashville; and Hollye Gallion, the pediatric sexual assault nurse practitioner who conducted the physical examination of the victim. The victim's physical examination was unremarkable, without any chronic or acute signs of injury or trauma. The victim, however, gave consistent accounts of the molestation to all three professionals. Specifically, using child-like terminology, the victim described the Defendant's having touched her genital area, her buttocks, and her breasts with his mouth, of his having forced her to both rub his penis and put his penis inside her mouth, and of the Defendant's having ejaculated.

On January 3, 2018, the Cheatham County Grand Jury indicted the Defendant for rape of a child and aggravated sexual battery. At the May 21-22, 2018 trial, the eight-year-old victim offered testimony that was similar to her earlier revelations to her family and to the professionals. Other witnesses included the victim's father, the victim's aunt, and the three professionals who had interviewed/examined the victim. Over the prior objection of defense counsel, the trial court admitted the video recordings of the two forensic interviews of the victim, which were played for the jury.

The Defendant elected not to testify and did not present any witnesses on his behalf. Following deliberations, the jury convicted the Defendant of rape of a child and aggravated sexual battery. The Defendant subsequently waived a sentencing hearing and agreed to concurrent sentences of thirty years for rape of a child and eight years for aggravated sexual battery, to be served at 100% in the Department of Correction.

## ANALYSIS

### I. Admission of Video Recordings of Forensic Interviews

---

[1] It is the policy of this court to protect the identity of victims of sexual crimes.

The Defendant first contends that the trial court erred in admitting the video recordings of the victim's forensic interviews with the DCS forensic interviewer. He argues that the trial court should have excluded the recordings under Tennessee Code Annotated section 24-7-123 because the interviewer asked leading questions and gave "modified interpretations" of the victim's answers to those questions. The State argues that the trial court did not abuse its discretion in admitting the recordings after conducting an appropriate analysis of their trustworthiness. We agree with the State.

Tennessee Code Annotated section 24-7-123 provides in pertinent part that a trial court has the discretion to admit "a video recording of an interview of a child by a forensic interviewer containing a statement made by the child under thirteen (13) years of age describing any act of sexual contact performed with or on the child by another" in a trial arising out of that sexual contact if the trial court is "reasonably satisfied" in a pretrial hearing that "particularized guarantees of trustworthiness" of the video are met. In making such a determination, the trial court is to consider the following non-exhaustive list of factors:

(A) The mental and physical age and maturity of the child;

(B) Any apparent motive the child may have to falsify or distort the event, including, but not limited to, bias or coercion;

(C) The timing of the child's statement;

(D) The nature and duration of the alleged abuse;

(E) Whether the child's young age makes it unlikely that the child fabricated a statement that represents a graphic, detailed account beyond the child's knowledge and experience;

(F) Whether the statement is spontaneous or directly responsive to questions;

(G) Whether the manner in which the interview was conducted was reliable, including, but not limited to, the absence of leading questions;

(H) Whether extrinsic evidence exists to show the defendant's opportunity to commit the act complained of in the child's statement;

(I) The relationship of the child to the offender;

- 3 -

(J) Whether the equipment that was used to make the video recording was capable of making an accurate recording; and

(K) Any other factor deemed appropriate by the court.

Tenn. Code Ann. § 24-7-123.

Thus, it is within the trial court's discretion to admit a video recording of a forensic interview if, after a pretrial hearing and consideration of the various factors listed in the statute and others the court may deem appropriate, the court is reasonably satisfied that the recording possesses guarantees of trustworthiness. See State v. McCoy, 459 S.W.3d 1, 10 (Tenn. 2014) ("Section 24-7-123 also affords trial courts considerable discretion in the determination of whether a video-recorded statement may be admitted as evidence.").

At the May 17, 2018 pretrial hearing on the State's April 3, 2018 motion to admit the recordings, Kathryn Norbeck, the executive director of the Child Advocacy Center for the Twenty-Third Judicial District, testified that the center was accredited by the National Network of Child Advocacy Centers and employed one forensic interviewer, Jessica Tigert.

Jessica Tigert described her educational and employment background, including her extensive training as a child forensic interviewer, and identified her curriculum vitae, which was admitted as an exhibit. She testified that she interviewed the victim on October 18 and November 9, 2017, in sessions that were video recorded per their standard protocol. She identified the DVDs of those interviews, which were played for the court with periodic pauses for Ms. Tigert to identify the individuals involved and to explain her procedure during the interviews. She testified that she interviewed the victim for a second time on November 9, 2017, in response to a tip that named the victim's father as a second perpetrator. The victim did not, however, report any abuse at the hands of her father.

Ms. Tigert testified that she generally attempted to avoid leading questions but used some during her second interview in order to clarify information the victim had provided. She explained that because of the later-arising allegation that the victim's father had abused the victim, she asked leading questions of the victim in order to clarify who the victim was talking about. She was adamant that she did not ask any leading questions to obtain the initial revelations of abuse from the victim but instead only to clarify the information the victim had disclosed in response to her initial non-leading questions. When asked on cross-examination if she thought it was appropriate to "clean [] up" a child's vague statement "and add to it" when asking a follow-up question, with the example given of her having asked the victim if something came out of the Defendant's penis after the victim referred

- 4 -

to it having "kind of . . . exploded," Ms. Tigert replied that she interviewed the victim the same way she would any child.

The eight-year-old victim, after affirming to the court that she understood the difference between the truth and a lie, testified that she had recently watched the entire DVDs of the interviews, that they accurately reflected what had occurred, and that she had identified them by marking them with her initials. She said she told the truth during the interviews. On cross-examination, she denied that there was any possibility that she had made a mistake in the information she provided during the interviews.

Following the presentation of proof, the trial court made extensive findings of fact in accordance with the statute. Among other things, the court found that the victim was unusually mature and straightforward in her answers, that she understood the difference between telling the truth and a lie and that there were consequences for lying, and that she was, therefore, a competent witness. The court further found that there was no apparent motive for the victim to lie, that there was nothing in the timing of the allegations to indicate lack of trustworthiness, and that the victim told the interviewer what had occurred in a very straightforward fashion using the type of terminology that most children would employ who are unfamiliar with sex acts. With respect to the Defendant's complaints about the manner of questioning, the court found that Ms. Tigert had not asked any improper leading questions and was one of the better interviewers the court had seen in 30 years of working with child sex abuse cases:

> And in regard to the questioning, the interviewer actually -- And the Court has done this a little over 30 years. A good part of that was as a prosecutor.

> So I've seen no telling how many interviews of child sex abuse. And this interviewer, actually, is one of the better ones I've seen. She's very good. And in regard to leading questions, [Defense Counsel], I'm really not sure what you were asking. But she did not use any leading questions that would lead the child or suggest an answer for a child.

> And after the completion of the interview, then she did a few leading questions just to clarify. You said this, this, this, is that correct? Yes. So the Court did not see anything that would indicate that the interviewer led this child to give the answers that she gave. The child was very spontaneous. She sat with the dog, and in most part in both interviews she constantly petted on the dog, and seems to be comfortable responding to questions.

The court, therefore, granted the State's motion to admit the recordings.

We find no abuse of discretion in the trial court's decision to admit the video recordings. The trial court conducted a pretrial hearing at which the various witnesses offered testimony to establish that the video recordings were made as part of the standard operating protocol the accredited center used in conducting forensic interviews of children who are alleged victims of sexual abuse. The interviewer described her extensive training and education, which was reflected in the curriculum vitae she provided for the court, and she and the child victim both identified the DVDs as accurate recordings of the interviews. Finally, the court made extensive findings of fact in which it reviewed the factors listed in the statute and noted for the record that the interviewer was one of the better interviewers the court had seen. The court also specifically found that the interviewer had not used any inappropriate leading questions. The Defendant is not entitled to relief on the basis of this issue.

## II. Establishing Child Victim's Competency in Front of the Jury

The Defendant next contends that the trial court erred by not establishing the child victim's competence as a witness outside the presence of the jury. He argues that by questioning the victim in front of the jury about the victim's understanding of the difference between the truth and a lie and whether her testimony would be truthful, the trial court "imbue[d] the child with the Court[']s approval" and impermissibly bolstered her credibility. The State disagrees, arguing, first, that the Defendant has waived all but plain error review because of his failure to raise a contemporaneous objection at trial and, second, that the procedure employed by the trial court did not prejudice the Defendant, as it was the equivalent of an adult witness swearing to tell the truth before beginning his or her testimony.

We agree with the State that the Defendant is limited to plain error review for not having raised a contemporaneous objection at trial. To be entitled to relief under the doctrine of plain error, the Defendant has the burden to establish the presence of the following five factors: (1) the record clearly establishes what occurred in the trial court; (2) a clear and unequivocal rule of law was breached; (3) a substantial right of the accused was adversely affected; (4) the issue was not waived for tactical reasons; and (5) consideration of the error is necessary to do substantial justice. State v. Vance, 596 S.W.3d 229, 254 (Tenn. 2020) (citations omitted). "'Moreover, the error must have been of 'sufficient magnitude that it probably changed the outcome of the trial.'" Id. (quoting State v. Banks, 271 S.W.3d 90, 119 (Tenn. 2008)).

We further agree with the State that the trial court's questioning of the child victim about her understanding of the difference between telling the truth and a lie and her responsibility to tell the truth during her testimony in no way infringed upon the jury's

province of determining the credibility of the witness. The Defendant cannot show that a clear and unequivocal rule of law was breached, that a substantial right of the Defendant was affected, that he did hot waive consideration of the alleged issue for tactical reasons, or that consideration of the alleged error is necessary to do substantial justice. The Defendant is not entitled to relief on the basis of this issue.

### III. Trial Court's Reaction to Hearsay Objection by Defense Counsel

As his final issue, the Defendant contends that the trial court erred by instructing the State on how to phrase a question in order to avoid the Defendant's hearsay objection. The Defendant argues that the Court's "assisting the State in how to avoid leading questions in front of the Jury, and in fact announcing the exact language to be used le[ft] the impression that the Court" was favoring the State's case. The State argues that the Defendant is again limited to plain error review for failing to raise a specific objection at trial to the court's instruction. The State further argues that the trial court did not commit plain error when it cautioned the prosecutor to rephrase a line of questioning that implicated the hearsay rules. We, once again, agree with the State.

The record reflects that the following exchange occurred during the prosecutor's questioning of Eric Bicaba, an investigator with the Department of Children's Services:

Q. Now, we'll get to the context of what was said by [the victim] later on, but did [the victim] make any disclosures during that particular interview?

A. Yes, sir. She made disclosures of sexual abuse.

Q. What, I guess, what did she disclose?

A. She disclosed that she was made to perform oral sex.

[**DEFENSE COUNSEL**]: Judge, I'm going to object. It's hearsay.

**THE COURT**: General?

[**PROSECUTOR**]: Your Honor, again, this is not for the truth of the matter asserted. This is to show what, I guess, the impression it had on Mr. Bicaba and how that furthered his investigation.

**THE COURT**: Well, ask him whether this is - - the statements are going to be in furtherance of a criminal prosecution or what was the reason for the statements, what was the reason for the interview. Follow that up.

The complained-of "instruction" in this case occurs frequently in trials when a court sustains a party's initial hearsay objection to the way a question is phrased and, by way of explanation, offers a suggestion to the other party on how to rephrase the question to avoid hearsay implications. There was nothing improper in the exchange and nothing in the court's response that indicated or suggested that the court was no longer impartial. The Defendant is not entitled to relief on the basis of this issue.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE